MARSH, Appellant, vs. HARRIS MANUFACTURING COMPANY, Respondent.

*February 12 — June 1, 1885.*

*(1) Patents: Estoppel of licensee to deny validity. (2) Demurrer to part of answer.*

1. One who, under a license from the patentee, has had the undisturbed use and enjoyment of an apparently valid patent, is liable for royalties agreed to be paid, and in an action therefor is estopped to set up as a defense the actual invalidity of the patent; and especially is this so where in the license or agreement under which he used the patent he admitted its validity and agreed not to dispute the same in any action.

2. A demurrer to a portion of the allegations pleaded as a separate answer herein is *held* regular and proper.

APPEAL from the Circuit Court for *Rock* County.

Action to recover the sum of $62,500, the amount of royalties alleged to be due under a written agreement. The contract as set out in the complaint was dated December 24, 1875, and was alleged to have been made for the purpose of consolidating several previous agreements. It recites, among other things, that on September 26, 1870, the plaintiff, *James S. Marsh*, together with W. A. Kirby and D. M. Osborne, executed to the defendant a license conferring upon it the privilege of making and using and vending to others to be used certain patented improvements in reapers (such license being annexed to the contract in suit and marked Exhibit B); that at the same time they gave to the defendant an agreement to indemnify it for all damages and costs which it might incur by reason of such improvements infringing on other patents; that the plaintiff, *James S. Marsh*, has represented that he now holds an agreement between himself and Kirby and Osborne by which he has the right to receive all royalties due or to become due by reason of the use of such improvements by the defendant under said

license, Exhibit B; that the defendant has released Kirby and Osborne, but not the plaintiff, from all liability on their agreement of indemnity, and has canceled said Exhibit B, as to said Kirby and Osborne, but not as to the plaintiff; that in consideration of such release and cancellation, and prior to the making of the same, the plaintiff agreed verbally with the defendant: " (1) That said *Marsh* would license and confer the right and privilege upon the *Harris Manufacturing Company* of making, using, and vending to others to be used, each, every, and all the improvements which are secured by the letters patent mentioned in said Exhibit B, within any and all of the United States and the territories thereof, for and during the full end and term of said several patents and upon the terms and conditions therein mentioned, except the said *Harris Manufacturing Company* were to report, send papers, and pay royalty to *James S. Marsh* at Lewisburg, aforesaid, instead of," etc.; and that " the said *James S. Marsh*, for the purpose of carrying out and reducing to writing the verbal agreement so made, . . . does hereby license and confer the right and privilege upon the *Harris Manufacturing Company* of making, using, and vending to others to be used, each, every, and all of the improvements which are secured in the letters patent mentioned in said Exhibit B, and for any and all improvement or improvements which have been or may be made to or upon any of said patents, or any patent or patents which said *Marsh* has since obtained, or may have or own, for any improvement or improvements in combined rakes and reels which is not secured by any of the patents above referred to, and this license shall be deemed to extend to any and all such improvements and relate back to the time of said release and cancellation and be deemed a continuation of said license Exhibit B, in the name of and from the said *James S. Marsh* to the said *Harris Manufacturing*

*Company,* and the said guarantee shall be deemed to continue but in the name of and from said *James S. Marsh,*" etc.

The said Exhibit B contained, among other things, the following clause: "(4) The said party of the second part [the defendant] hereby acknowledges the validity of the aforesaid patents and agrees not to dispute the same or set up any defense against the validity thereof in any action or suit upon or controversy arising out of this license or any of the agreements herein or upon any note or obligation given in consideration of or upon settlement for patent fees accruing thereunder."

The defendant in its answer set up several separate answers or defenses. The first separate answer contains denials of many allegations of the complaint. The second sets up the statute of limitations. The substance of the third separate answer is stated in the opinion. The plaintiff demurred to the sufficiency of the separate defense contained in the third separate answer, omitting the allegations of settlement and payment and the allegation that the defendant has not since February 21, 1878, manufactured or sold any reapers or revolving rake apparatus under or in pursuance of any of said contracts or agreements. From an order overruling such demurrer the plaintiff appealed.

*A. A. Jackson,* for the appellant, argued, among other things, that the defendant is bound by its acknowledgment of the validity of the patents and its agreement not to dispute such validity, and is estopped to set up their invalidity in this action. *Magic Ruffle Co. v. Elm City Co.* 13 Blatchf. 151; *Brooks v. Stalley,* 3 McLean, 523; *Stone v. Gilman,* 58 N. H. 135; Hindmarch on Patents, 245; *Bowman v. Taylor,* 2 Ad. & El. 278; *Nat. Mfg. Co. v. Meyers,* 7 Fed. Rep. 355; *White v. Lee,* 4 id. 916; Curtis on Patents, 215; *Washburn & M. Mfg. Co. v. C. B. W. F. Co.* 22 Fed. Rep. 712. Having received all the benefits of the license, and not hav-

ing been disturbed in its use of the patents, it cannot allege their invalidity in order to escape payment. *Lawes v. Purser*, 6 El. & Bl. 930; *S. C.* 88 Eng. C. L. 929; *Cutler v. Bower*, 11 Ad. & El. (N. S.) 973; 61 Eng. C. L. 972; *Noton v. Brooks*, 7 Hurlst. & N. 499; *Taylor v. Hare*, 1 Bos. & Pul. N. R. 260; *Hills v. Laming*, 9 Exch. 256; *Hall v. Condor*, 2 Com. B. (N. S.), 22; 89 Eng. C. L. 20; *Adie v. Clark*, L. R. 3 Ch. Div. 135; *Chantu v. Dewhurst*, 12 Mees. & W. 822; *Trotman v. Wood*, 16 Com. B. 479-497; 111 Eng. C. L. 479; *Bartlett v. Holbrook*, 1 Gray, 114; *Birdsell v. Perego*, 5 Blatchf. 251; *Evory v. Candee*, 17 id. 200; *Jones v. Burnham*, 67 Me. 93; *Wilder v. Adams*, 2 Woodb. & M. 329; *Kinsman v. Parkhurst*, 18 How. 289; *Johnson v. Linen Co.* 33 Conn. 436; *Marston v. Swett*, 66 N. Y. 206; Walker on Patents, sec. 307; *White v. Lee*, 14 Fed. Rep. 789; *McKay v. Jackman*, 17 id. 641; *Angier v. Eaton*, 98 Pa. St. 594; *Patterson's Appeal*, 99 id. 521.

*Wm. Ruger*, for the respondent, contended, *inter alia*, that the acknowledgment of the validity of the patents did not estop the defendant to assert their invalidity. When a contract is void for want of consideration or other reason, all its terms are void; and if this patent was void it follows that the license was void, and the agreement not to dispute the validity of the patent goes for naught with the rest. *Saxton v. Dodge*, 57 Barb. 84, 116; *Rice v. Garnhart*, 34 Wis. 453; *Hawks v. Swett*, 4 Hun, 146. The contract was terminated by the notice of February 21, 1878, and could not, therefore, operate as an estoppel so far as subsequent transactions are concerned. This is the rule respecting the relation of landlord and tenant. Wood on Landl. & T. secs. 235-6. An estoppel never arises except where it would be inequitable to allow the party to assert the truth; and an agreement not to assert the truth, where it is equitable to assert it, is void as contrary to public policy. *Rice v. Garnhart, supra; Sherman v. C.*

*T. Co.* 31 Vt. 162, 177–182. See, also, *Neilson v. Fothergill*, 1 Webst. Pat. Cas. 290; *Harlow v. Putnam*, 124 Mass. 553; *Marston v. Sweet*, 82 N. Y. 526. The demurrer was irregular and was properly overruled because it was not a demurrer to the whole of the third defense. If the plaintiff regarded a portion of that defense as improperly included therein, his remedy was by motion, and after thus getting rid of that portion he could have tested the sufficiency of the residue by demurrer. *Akerly v. Vilas*, 25 Wis. 704; *Tewksbury v. Schulenberg*, 41 id. 592; 2 Wait's Pr. 448; *Cobb v. Frazee*, 4 How. Pr. 413; *Smith v. Brown*, 6 id. 383; *Lord v. Vreeland*, 15 Abb. Pr. 122; *S. C.* 24 How. Pr. 316.

The following opinion was filed March 3, 1885:

COLE, C. J.   According to our understanding of the complaint, the agreement dated December 24, 1875, continued in force, in a modified form, the prior agreement of September 26, 1870.. This, we think, is obvious from these clauses in the former instrument: " (1) That said *Marsh* would license and confer the right and privilege upon the *Harris Manufacturing Company* of making, using, and vending to others to be used, each, every, and all the improvements which are secured by the letters patent mentioned in said Exhibit B, within any and all of the United States and the territories thereof, for and during the full end and term of said several patents, and *upon the terms and conditions therein mentioned*, except," etc.   Again, it is recited that the plaintiff, for the purpose of carrying out and reducing to writing the verbal agreement made prior to the release and cancellation mentioned, " does hereby license and confer the right and privilege upon the *Harris Manufacturing Company* of making, using, and vending to others to be used, each, every, and all of the improvements which are secured by the letters patent mentioned in said Exhibit B, and for

any and all improvement or improvements which have been or may be made to or upon any of said patents, or any patent or patents which said *Marsh* has since obtained, or may have or own, for any improvement or improvements in combined rakes and reels which is not secured by any of the patents above referred to; and this license shall be deemed to extend to all such improvements, and relate back to the time of said release and cancellation, and *be deemed a continuation of said license, Exhibit B, in the name of and from said*" plaintiff, etc. These clauses show that the parties intended to keep alive and incorporate into their new agreement the provisions of Exhibit B, so far as those provisions were applicable to their altered circumstances or changed relation. We do not think Exhibit B was ever extinguished by any cancellation, so far as the parties to this suit were concerned. It was modified in many essential parts, but not destroyed. There is nothing in any of the exhibits which will fairly sustain such a contention. Therefore, Exhibit B must be regarded when we seek to determine the rights and liabilities of the parties.

In the third answer, as it is called, the defendant alleges, in substance, (1) a settlement and payment of all royalties and license fees due the plaintiff for or on account of reapers manufactured or sold by it, or through its procurement, prior to February 22, 1878; (2) that it has not, since February 21, 1878, manufactured or sold any reapers or revolving raking apparatus under or in pursuance of the contracts mentioned in the complaint, and that it did, on that day, give the plaintiff personal notice that it would not thereafter manufacture or sell any reaper or reaping-machines under or in pursuance of said contracts, or either of them; and (3) that the plaintiff's patents are void. The plaintiff did not, and, of course, could not well, demur to this answer so far as it related to the settlement and payment of royalties and license fees. But he did demur to the rest of

the answer. As the answer was framed, this was the only course open to him, if he wished to raise the question as to the sufficiency of that part of the answer. The demurrer will therefore be deemed regular and proper to raise that question.

It appears to us that the matters stated in this answer do not constitute any defense to this action for royalties agreed to be paid. In the first place, it will be noticed that there is no direct allegation that the defendant had ceased manufacturing and selling the machines and apparatus mentioned in the contracts. True, it is alleged that it has not, since the day the notice was given, manufactured or sold any reapers, etc., " under or *in pursuance with any of the contracts or agreements*," etc. But this is not equivalent to an averment that since February 21, 1878, it has entirely ceased to manufacture and sell these machines. It gave notice that it would not go on under the contracts. In other words, it repudiates these · contracts as not binding upon it, and will continue to manufacture and sell the machines without regard to the plaintiff's rights under his patents. This is the position of the defendant, as we infer from the allegations in the answer. And the defendant justifies its course on the ground that the plaintiff was not the inventor or discoverer of the improvements secured by his letters patent, and that his original and reissued patents are void. The plaintiff's counsel suggests that by the contracts the defendants secured and had the benefit of other patents besides those mentioned in the third answer, and that these constitute a sufficient consideration for the agreements. Be this as it may, it is clear to us that upon the facts the defendant cannot successfully defend an action for the royalties on the ground of the invalidity of the patents. It has had the benefit of these patents, which were apparently valid. It has not been disturbed in the use of them by any one. It has not been adjudicated by any court that

these patents were void, or that the plaintiff was not the first inventor of the improvements patented. It is fair to assume that the defendant is manufacturing and putting upon the market these very patented machines, and that it is receiving and enjoying all the benefits of the patents which it contracted for. What justice or equity is there in its claim that it should be relieved from the payment of the royalties? We certainly can see none, and the authorities upon the question do not support the claim.

The cases cited upon the brief of plaintiff's counsel are distinct and conclusive upon this point. The English cases appear steadily to resist all attempts of licensees, under patents apparently valid, to raise the question of their invalidity in an action for the royalty. The decisions in this country are in substantial accord with that view. Judge FINCH, in *Marston v. Swett*, 82 N. Y. 526–533, thus states the rule: "Where the patent is apparently valid and in force, the party using it, receiving the benefit of its supposed validity, is liable for royalties agreed to be paid, and cannot set up as a defense the actual invalidity of the patent. The reasons for the rule are that the party has got what he bargained for; that he cannot be allowed at the same time to affirm and disaffirm the patent; and that he cannot in this way force the patentee into a defense of his right, and compel him to try it in a collateral action. While the manufacture goes on under an apparently valid patent, it is presumed to be under and in accordance with the agreement to pay royalties. If the manufacturer does not so intend, and chooses to make the patented article, not under the patent, but in hostility to it, he must give notice of that intention, in order that the presumption may not attach or the patentee be misled." That was an action by an assignee for royalties. It was proposed to show as a defense that the patent-office had annulled the patent because the plaintiff's assignor was not the original inventor, and had awarded

a patent to another. This was held to be a good defense for all royalties accruing after the date of the patent-office decision.

But in the present case it does not appear that the plaintiff's patents have ever been judicially avoided by any tribunal. Besides, in the contract the defendant acknowledged the validity of the plaintiff's patents, and agreed not to dispute the same, or set up any defense against their validity in any action upon or controversy arising out of the license, or any of the agreements therein, or upon any note or obligation given in consideration of or upon settlement of patent fees accruing thereunder. Here is a clear and direct admission of the validity of the patents, and an agreement not to question their validity. The rule is well settled that in a suit upon a license or contract which contains a covenant on the part of the licensee by which the validity of the patent is admitted, and the licensee has had the benefit of the license, that he is estopped to deny the validity of the patent by setting up anything contrary to the admissions in his contract. Many cases in support of this rule will be found on the brief of plaintiff's counsel. The learned counsel for the defendant questions the soundness of the principles upon which these decisions rest, but we are disposed to regard them as correct expositions of the law upon this question.

It results from these views that the facts stated in the third answer constituted no defense, and the demurrer to it was improperly overruled.

*By the Court.*— The order of the circuit court is reversed, and the cause is remanded for further proceedings according to law.

CASSODAY, J., took no part.

A motion for a rehearing was denied June 1, 1885.