### STARLING v. ST. PAUL PLOW-WORKS.

*(Circuit Court, D. Minnesota. February 8, 1887.)*

1. PATENTS FOR INVENTIONS—LICENSE—TERMINATION OF LICENSE.

A licensee of letters patent, under a contract by which he is permitted to manufacture and sell the article covered by said patent, cannot without the consent of the licensor, terminate the rights conferred by the license, and, there being no limitation on its face, the license continues until the expiration of the present letters patent.

2. SAME—INFRINGEMENT—IMPROVEMENT IN SULKY-PLOWS—ACTION AGAINST LICENSEE.

The first claim of letters patent No. 154,293, dated August 18, 1874, for an improvement in sulky-plows, covering the combination of a crank-bar, plow-beam, and axle, for the purposes set forth, so as to enable the horses to pull the plow out of the ground by the adjustment of the lever in the notches of the curved bar, *held* to be infringed by defendants in the manufacture of plows in which the mechanism used is only such mechanical changes as increase the power of the lever from a single to a compound action, reversing its movement from a lever moving forward to one pulled towards the driver, and in which a perforated segment and spring-dog are used, in connection with which the lever operates to raise and lower the plow-beam, these being only mechanical changes and equivalents; and a change in the device for depressing the plow-beam in front will not defeat the right of the patentee to an action for breach of contract against a licensee of his patent.

3. SAME—NOVELTY.

In an action against a licensee for breach of a contract of license for the manufacture and sale of sulky-plows, covered by letters patent No. 154,293, dated August 18, 1874, when the contract of license contained no recital or admission by the licensee that the licensor had invented the improvement in sulky-plows, and plaintiff having joined issue on the defense of want of novelty set up in the answer, no estoppel being pleaded, and the defendants having introduced in evidence letters patent No. 116,956, No. 120,560, No. 123,505, No. 132,772, No. 134,121, and No. 143,147, *held* that plaintiff's improvement was not anticipated by either of these patents, neither of them having the combination of the plaintiff, for the purposes described in his patent.

At Law.

*Frackelton & Careins,* for plaintiff.

*J. B. & W. H. Sanborn,* for defendant.

NELSON, J. This is a suit for a breach of contract. The plaintiff is a citizen of Nebraska, and the defendant of the state of Minnesota. The defendant is a naked licensee of a patent, (No. 154,293, dated August 18, 1874,) under a contract executed December 17, 1877, by which it is permitted to manufacture and sell the Starling sulky-plow in the following territory, viz.: "Wisconsin, Minnesota, and Dakota, and all that part of Iowa north of the Northwestern Railway, and all that territory west and north of the above-described territory." A royalty of $2.50 per plow was exacted to be paid on accounts rendered July 1st and January 1st of each year. After the defendant had manufactured and sold between 35 and 40 plows under the license, and on or about December 5, 1878, written notice was given the plaintiff that the construction of this sulky-plow was unsatisfactory and useless, and many had been returned as unserviceable and that the defendant would thereafter manu-

facture a sulky-plow of its own design, and renounced its license. The defendant, after the notice, rendered an account up to January 1st, and since then has manufactured about 960 plows, called "Starling Plow," designed by Berthiaume, and about 350 plows called the "Harris Plow." The plaintiff insists upon a breach of the contract of license. Issues are joined under the pleadings, and, a jury being waived, the case is tried by the court.

*Starling Invention, Authorized to be Manufactured and Sold by Defendant.* In this, the plaintiff's invention, there is a crooked axle and a crank-bar bent twice at right angles, passing through a box bolted to the plow-beam towards the rear. The end of this bar nearest to the driver's seat or right wheel of the sulky rides upon the inner end of the journal of this wheel. The lower end of a spring lever, which projects upward along a curved bar on the right side of the driver's seat, is connected rigidly with this end of the crank-bar. The curved bar, with notches on the outside to receive this upright lever, is attached to the axle and part of a brace running from the axle to the tongue; and thus the crank-bar bolted to the plow-beam can be held in any position to which the lever is adjusted. The plow is thus locked either in the ground, at any desired depth, or up at any desired height; and, in practical operation, when raising the plow up, the point comes out of the ground first. To the front of the plow-beam is attached a jointed or hinged foot-lever, composed of a vertical bar, the upper end of which is joined to a lever upon which the foot of the driver may be placed, and the lower end is pivoted to the brace above mentioned, running from the axle to the tongue, and also to the plow-beam. A stop is fixed at the rear part of the tongue, so that when the foot-lever is raised the rear end strikes against it. The driver can also lock the forward end of the plow-beam down by this lever. The manner in which the crank-bar rides on the inner end of the journal, and the lever is attached, is distinctly pointed out in his drawing, figs. 3 and 4. "The first claim is for the combination of the crank-bar lever, plow-beam, and axle, for the purposes set forth, so as to enable the horses to pull the plow out of the ground." This is done by the adjustment of the lever in the notches of the curved bar. "The second claim is for a combination of the foot-lever and stop with brace-tongue and plow-beam, as shown and described" in the specifications of the patent.

1. I find that the defendant could not, without the consent of the plaintiff, terminate the rights conferred by the license, and, there being no limitation on its face, the license continued until the expiration of the present letters patent.

2. The Starling plow is of utility, and an operative machine, although it might work better in some soils than in others.

3. I find that the first claim of the plaintiff is manifestly infringed in the Berthiaume and Harris plows, so designated; and the mechanism used is only such mechanical change as increases the power of the lever from a single to a compound action, reversing its movement from a lever moving forward to one pulled towards the driver. In the Berthiaume

plow a perforated segment and a spring-dog are used, in connection with which the lever operates to raise and lower the plow and beam, which are mechanical changes and equivalents only. In the Harris plow substantially the same device is used. While in the Berthiaume plow the device used for depressing the plow-beam in front is unlike Starling's, the change in that particular would not defeat the right of plaintiff to an action for breach of contract.

4. I have hesitated about going into the question of novelty, but, there being in the contract of license no recital or admission that plaintiff had invented this improvement in sulky-plows, and the plaintiff having joined issue on the defense of want of novelty set up in the answer, and not pleaded an estoppel, I have reluctantly allowed the defendant to introduce evidence on that issue, and find that the plaintiff's improvement is not anticipated by any of the patents introduced in evidence.

*Hay & Freeman's Patent, No. 116,956, dated July 11, 1871.* In this patent for an improvement in cultivators there are two crank-axles, on which the ground-wheels run. One is attached to the upper side of the main axle, which supports the frame and its plows, while at the opposite end the other is attached to the under side. There are levers attached to each end of the axle, with other devices described, so that an independent vertical adjustment of the wheels in relation to the axle is obtained, and thus the main axle is supported at any required height from the ground, and with one end higher than the other, and, by a locking device, the lever will hold the wheels at any height desired. This device is to regulate the depth of the furrow to be cut. A bar of an inverted "U" form loosely secures the plow-frame to the axle, with its ends pivoted to the main axle. When this bar is turned upward, the frame and plows are raised upward, and moved forward until the arms of the bar are carried forward a vertical point, so as to support the frame, and keep the plows out of the ground. This is done by a lever attached by a link to the frame. There is no mode of locking, by the lever, the plow in the ground at any required depth, or raising the point of the plow by the lever, and locking, so that the horses can pull it out of the ground. The object of this invention, in part, was to mount the main wheels so as to be capable of independent vertical adjustment, and arrange the main plow-frame so that it may be raised or lowered.

*Worrell & Rynerson's Patent, No. 120,560, dated October 31, 1871.* This patent plow has an axle raised in the middle, and, similar to the Hay and Freeman, has a transverse bar, which is supported in the rear to the plow-beam by a hinge, the swinging plate secured rigidly to the bar, the arms of which, extending forward, are pivoted to the vertical parts of the axle. One arm extends forward, and forms a foot-rest. The beam is supported so that pressure on the foot-rest elevates the beam and plows. The draught is upon the tongue, to which a curved rack and an elbow lever are pivoted. The short arm of this lever in the rear turns upon a transverse pin, which passes through a vertical loop to which the forward end of the plow-beam is hung by an eye-bolt. The teeth of the rack facing the lever enables the depth of the furrow to be regulated by

raising the points of the plow. The plow is kept in place by the rack, which is made to engage with the transverse pin at the proper point of elevation. When the points of the plow are raised by this device, it is not possible to lower by a reverse action of the lever. Should an attempt be made, resistance would come from the tooth of the rack engaged. The object of the foot-lever is to enable the driver to raise the plow entirely out of the furrow, and out of contact with the ground; but, as soon as his foot is removed, the plow falls back. There is no device for locking the plow at any required depth, and the foot-lever, which is an extension of the yoke or transverse bar, will not raise the point of the plow.

*Owen's Patent No. 1, No. 123,505, dated February 6, 1872.* In this sulky attachment for plows is a drop-iron, passing through the tongue and a "T" piece at the bottom, over the forward part of the beam, with a device on the drop-iron for regulating the depth at which the plough shall run by a pin passing through holes in the drop-iron above the tongue, and a sliding sleeve stop, secured below in any desired position by a set-screw. The driver, having secured the stop to the drop-iron at the desired position, and fixed the pin in the drop-iron above the tongue, is enabled, by treading on the "T" piece, to strike the front end of the beam, and depress it so that it enters the ground to an extent limited by the pin. He then withdraws his feet, and the stop strikes under the tongue. The driver does not operate this device while the plow is in motion. No jointed foot-lever is used, as in the plaintiff's patent. Owen, by his device, controls the depth of furrow, and keeps the plow in place. There is a foot-rest upon the arm of the yoke or hanger, which extends forward as in the last machine, and, by placing his foot upon it, the driver can employ his weight in elevating the plow. The axle is composed of two crank-arms, and there is also a hand-lever pivoted to the right crank-arm, and on this pivot is a cog-wheel loosely mounted, gearing with another cog-wheel attached to the arm of the yoke or hanger, and a ratchet-wheel, which is attached to and moves with the cog-wheel pivoted to the crank-arm. The hand-lever has a spring-pawl pivoted to it, and a device by which the pawl will engage with the ratchet-wheel. This device enables the driver, seated above, to raise the plow out of or off the ground by pulling the lever towards him. There is a latch pivoted to the axle, extending rearward, and, when the plow is elevated high enough, the latch engages with a shoulder in the hanger or yoke, and supports it. The driver, with the foot-rest, can aid in raising the plow when he operates the lever. An arm projecting from the lever, at a point near where it is pivoted downward in front, operates as a stop, by striking the axle so that, when the plow is raised to a desired height, the driver can hold it by the foot-rest, and let the hand-lever down in front until the stop strikes the axle, and then, by engaging the pawl with the ratchet, and releasing the pressure from the foot-rest, the weight of the plow keeps the pawl locked. The plow can be held at a certain elevated position, but not locked in the ground. Neither will the lever raise the point of the plow out of the ground; and

the front device, running through the tongue, will prevent the tilting of the point of the plow when raising it out of the ground.

*Owen's Patent No. 2, No. 132,772, patented November 5, 1872.* In this patent the plow, when elevated, may be locked to insure proper depth of furrow; but when a small falling and locking lever, which is pivoted to a pawl as a balance, is thrown back, and the plow is lifted so that the pawl is withdrawn from the ratchet, it will drop to the ground. The lever used will lock the plough so as to prevent it from going deeper, but the point of the plow cannot be raised by the lever.

*Worrell Patent, No. 134,121, dated December 17, 1872.* There is no locking lever described in this patent as in Starling's, and no device like his for raising the point of the plow, or locking the plow in the ground.

*Harrison Patent, No. 143,147, dated September 23, 1873.* This invention has a device attached to the hub of the right wheel, by means of which the plow is raised out of the ground by the power of the team, but no hand or foot lever arrangement for raising the plow out of the ground.

Neither of these patents have the combination of the plaintiff, for the purposes described in his patent, and do not anticipate the invention.

The conclusion is that the plaintiff is entitled to a royalty on 1,310 plows, at $2.50 each, making the amount of $3,275, for which sum judgment is ordered.