Robinson, J.
 

 The defendant in error obtained a judgment in the trial court against the plaintiff in error for royalties claimed to be due upon a written contract between the parties, whereby the defendant in error granted to the plaintiff in error the right, not exclusive, to manufacture and sell an article upon the principle of which the defendant in error held letters patent.
 

 
 *364
 
 Upon error to the Court of Appeals the judgment of the trial court was affirmed.
 

 The defense of the plaintiff in error was that the letters patent were invalid because letters patent had been issued to other parties covering the same principle and device covered by the letters patent in question long prior to the issuing of the letters patent to the defendant in error, and that upon its discovery of that fact it had renounced the contract and stood out from under any protection, benefit or right afforded it by such contract.
 

 The defendant in error contended in the courts below, and contends here, that the so-called renouncement of the contract and the rights and benefits of the plaintiff in error under it was equivocal and uncertain, and that the judgment should be affirmed for that reason, since the plaintiff in error could not enjoy the benefit of the patent right which it held by grant from the defendant in error and at the same time contest defendant in error’s title thereto.
 

 We, however, reach the conclusion, from the correspondence as a whole, that there was no misunderstanding between the parties as to the purpose of the plaintiff in error to renounce the contract and to stand out from under the protection, rights and benefits afforded by it, and that, in so far as it was within its power, it had done so.
 

 The determinative question, then, is whether the plaintiff in error, the licensee, without the consent of the defendant in error, the licensor, may by its own express renunciation of the contract terminate the relationship created by the contract.
 

 
 *365
 
 The pertinent portions of the contract read:
 

 “A. Conditioned upon the continued compliance by the Licensee with the terms and conditions hereinafter specified, the Licensor on its part does hereby grant to the Licensee the right and license, not exclusive, to manufacture, have manufactured for it, assemble, sell and use, hydrocarbon motors and parts thereof employing the invention described and claimed in said Letters Patent, for and to the full end of the term thereof.
 

 “B. The Licensee, on its part, does hereby agree:
 

 “1. That it shall and will pay to the Licensor in the manner and time provided hereinafter, a sum, hereinafter called royalties, for and upon each and every motor piston or/and piston casting manufactured and sold or otherwise disposed of by or in behalf of the Licensee under this license * *
 

 The contract did not require the licensee to manufacture any stipulated number of pistons, or any pistons. The stipulated obligation of the licensee, the plaintiff in error, was to account and pay for the pistons it manufactured under the patent. The contract contained a forfeiture clause in favor of the defendant in error, the licensor, but none in favor of the plaintiff in error, the licensee.
 

 The contract bore date of July 22, 1922, and the licensee, from that date until the first day of April, 1927, paid royalties to the licensor according to the terms of the agreement. On March 6, 1928, the licensee returned the license agreement to the licensor and notified the licensor, in writing, that it no longer desired nor would accept benefits under the contract. The defendant in error, the licensor,
 
 *366
 
 never assented to the termination of the royalty agreement. The licensee continued to manufacture and sell pistons involving the principle covered by the letters patent.
 

 It will be observed that the term of the grant was “for and to the full end of the term” of the patent; that the licensee agreed to “pay * * * for and upon each and every motor piston * * * manufactured and sold * * * under this license.”
 

 Concededly the contract bound the defendant in error, the plaintiff in error complying with its terms, during the life of the patent. Concededly it bound the plaintiff in error during so much of the same period as it continued to manufacture and sell “under” the contract.
 

 We are asked to find, by a construction of the contract, that the plaintiff in error was bound by the contract only at its own will. While no word of the contract inhibits such construction, it contains no words inviting or suggesting such construction.
 

 While the question is not one of exclusive federal cognizance, and the federal decisions are not, therefore, necessarily controlling, nevertheless, since the decisions of the state courts are not in accord and we have no decision of our own court upon the subject, and the question is closely related to the subject of patent law, we are inclined to follow the decisions of the Supreme Court of the United States rather than conflicting decisions of various state courts, and of course cannot follow the decisions of inferior federal courts inconsistent with the decisions of the Federal Supreme Court. Hence, we are following the case of
 
 St. Paul Plow-Works
 
 v.
 
 Starling,
 
 140 U. S., 184, 11 S. Ct., 803, 35 L. Ed., 404,
 
 *367
 
 which was an action for infringement and royalties. The court had under consideration a contract essentially like the contract here under consideration, except that it did not contain a clause defining or declaring the duration of the license, and did not contain the words “not exclusive,” although the contract manifestly was not an exclusive one. The court in that case held that the license continued for the life of the patent; that, notwithstanding the renouncement of the contract by the licensee, the licensor had a right to regard the license as still in force and sue for royalties. There the claim was made that a different rule applies to an exclusive and a nonexclusive contract with reference to the right of the licensee to revoke at will. We quote from the opinion of Mr. Justice Blatchford, speaking for the court, at page 194 (11 S. Ct., 803, 806):
 

 “The defendant contends that there is an essential distinction between the contract in the present case and a contract which grants the exclusive right under a patent to make and sell the patented article in a certain territory, or the exclusive right in respect of a certain number of patented machines; that, in the latter case, the contract exists for the life of the patent, while in the present case it does not; and that in the present case the licensee could renounce all right under the license, while in the other case he could not. This ground is maintained upon the view that, where the patentee grants an exclusive right, he deprives himself of the privilege of granting any right to others in the given territory; and that, therefore, the exclusive licensee will not be permitted, after he has thus deprived the licensor of his privilege of licensing others, to re
 
 *368
 
 nounee the license and thus damage the licensor, while that reason does not exist under a contract or license like that in the present case.
 

 “But we think that this attempted distinction is fanciful and not sound. '* * * we are of opinion that the Circuit Court [29 F., 790] was correct in holding that the defendant could not terminate, without the consent of the plaintiff, the rights conferred by the license, and that, as there was no limitation on its face, the license continued until the expiration of the patent. The contract has no provision for its termination or its renunciation. The grant is of the right to make and sell the Starling sulky plow under the patent, that is, under the patent so long as it is a patent, for the whole term of its duration. For plows made and sold under the patent, and in accordance with any of its claims, the defendant, at all times during the existence of the patent, could set up the contract as a defense against a claim for infringement * * *
 

 “We are of opinion that the license, in the absence of a stipulation providing for its revocation, was not revocable by the defendant, except by mutual consent or by the fault of the other party. If the plaintiff, after receiving the notice, had sued the defendant for infringement, he would have been properly regarded as acquiescing in the renunciation; but, instead of that, he elected to regard the license as still in force, and brought an action to recover the royalties provided for by it, which he was entitled to do.
 
 Marsh
 
 v.
 
 Harris Mfg. Co.,
 
 63 Wisconsin, 276, [22 N. W., 516];
 
 Patterson’s Appeal,
 
 99 Penn. St., 521;
 
 Union Mfg. Co.
 
 v.
 
 Lounsbury,
 
 41 N. Y., 363.
 

 
 *369
 
 “The defendant could not coerce the plaintiff into putting an end to the contract, by the means it adopted. It must bring a suit to set aside the contract before it can be allowed to say that, in regard to what it afterwards does, it does not act under the contract, provided the machines it makes embody a claim of the patent. Notwithstanding the defendant ' gave notice that it renounced the license, yet it did not in fact renounce it, for it continued to make plows embodying one of the claims of the patent.”
 

 Accordingly we hold that so long as the contract in question is unrevoked by its own terms, by mutual consent or by decree of court, and so long as the letters patent are unrevoked by the Patent Office, or have not been judicially declared invalid, the plaintiff in error is estopped to deny the validity of the letters patent.
 

 Judgment affirmed.
 

 Marshall, C. J., Jones, Matthias, Day, Allen and Kinkade, JJ., concur.