## Bassani Processes, Inc., *v*. Edward Stern & Company, Inc., Appellant.

Argued November 18, 1936,

Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES,
JJ.

*Edward S. Weyl,* of *Kraus & Weyl,* with him *H. J. Seman,* for appellant.

*Paul Maloney,* with him *Evans, Bayard & Frick,* for appellee.

OPINION BY STADTFELD, J., January 29, 1937:

This is an action of assumpsit instituted by Bassani Processes, Incorporated, against Edward Stern & Company, Incorporated, to recover the sum of $250 alleged to be due as a royalty under a written license agreement between the parties.

Plaintiff, in its statement of claim, averred that under a written agreement, copy of which is attached to the statement, it licensed defendant to use certain United States Letters Patent, and in consideration of such license, defendant agreed to pay the sum of $250 per annum, in advance, during the term of said agreement; that defendant has failed and refused to pay $250 due on June 5, 1936.

The agreement dated June 5, 1928, in consideration of certain covenants and agreements, licensed the defendant under certain Letters Patent, and under any other Letters Patent which plaintiff shall thereafter obtain and acquire, to use apparatus now installed on the premises of defendant and grants the non-exclusive right and license to use the same subject to the conditions therein contained.

The agreement, inter alia, provided that the licensee shall at all times keep the licensed equipment in good and efficient working order; the licensee acknowledged the validity of each of the Letters Patent owned by plaintiff, or under which it is licensed; that upon termination of the agreement by cancellation by plaintiff company, licensee will forthwith destroy the device or otherwise render it unfit for use; that plaintiff may cancel said license upon failure of the licensee to observe and fulfill any of the terms, conditions and covenants of the agreement; *that this license Agreement shall be for the life of the patents mentioned; that the agreement may be altered, modified, changed or rescinded only by the mutual consent of the parties in writing thereon endorsed and attached.*

Defendant, in its affidavit of defense and statement of New Matter, denied that it had been licensed to use plaintiff's patents and that it had agreed to pay $250 per annum for a license; averred that, on the contrary, the agreement licensed defendant to use not plaintiff's patents, but a specific piece of equipment which defendant itself had had constructed and that the fee of $250 per year was to be paid for the use of the equipment in those years in which the equipment was used. It was further averred that this equipment had been built and was in use before the agreement was made; that plaintiff, learning of its use, claimed that it infringed its own patented processes; that, after negotiations, it was agreed that the equipment should be

licensed as though it were within the scope of the patents and defendant should pay for the use of the equipment. It was further averred that prior to June 5, 1936, defendant discontinued the use of the equipment and on May 20, 1936, delivered it to plaintiff which refused to accept it; that defendant gave plaintiff written notice on May 21, 1936, that it would not use and was relinquishing any right to use the equipment in the ensuing year.

Plaintiff filed a reply to New Matter raising questions of law, and at the same time filed a rule for judgment for want of a sufficient affidavit of defense. The questions of law were sustained and the rule for judgment made absolute in an opinion by GABLE, J. This appeal followed.

There is no averment of the omission of anything from the agreement by reason of fraud, accident or mistake, nor is there any ambiguity in the agreement itself. The question before us is simply the construction of the license agreement in the light of the surrounding circumstances.

The affidavit of defense admitted the making of the contract and the non-payment of the royalty for the year beginning June 5, 1936, but alleged that no royalty was due under the terms of the agreement, since the defendant would not use the licensed equipment and had given notice of its intention not to use the same. The agreement provided for the payment of two hundred and fifty dollars per annum in advance, *and that the license agreement shall be for the life of the patent,* and that the agreement may be altered only by the consent of the parties in writing attached thereto.

Non-uses by defendant is nowhere referred to in the agreement, nor is there any right of cancellation given to the licensee, to relieve it of liability.

The licensee under a patent has no right to terminate the license without the consent of the licensor; *St.*

*Paul Plow Works v. Starling,* 140 U. S. 184; *Dall Motor Parts Co. v. Packard Motor Car Co.,* 124 Ohio St., 363, 178 N. E. 835.

In *Lauth v. McKenna Steel Working Co.* (1915) 160 Wis. 309, 151 N. W. 797, the plaintiff entered into an agreement with defendant by which plaintiff licensed defendant to erect and use furnaces covered by letters patent owned by plaintiff, the royalty to be (in part) $100 per year for every furnace erected. Defendant claimed that, because it had not used some of the furnaces erected, it was not liable for royalties on those furnaces. The court gave judgment for plaintiff, saying: "It is the right which the defendant acquired, to use or not use at its pleasure for which it is paying, and not for the use of the particular device."

The agreement is plain and free from ambiguity. Extended discussion is not necessary to support the correctness of the conclusion of the lower court.

The assignments of error are overruled and judgment affirmed.