**POLES, INC., W. F. Keegan & Co., Inc.**

v.

**Estate of William H. A. BEECKER (a/k/a William Beecker).**

**Civ. A. No. 78–1843.**

United States District Court, E. D. Pennsylvania.

Oct. 19, 1978.

Nelson E. Kimmelman, Philadelphia, Pa., for plaintiff.

James M. Peck, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Plaintiffs Poles, Inc. ("Poles") and W. F. Keegan & Company, Inc. ("Keegan") are corporations organized under the laws of the Commonwealth of Pennsylvania; each has its principal place of business in Pennsylvania. The defendant is the Estate of William H. A. Beecker ("Beecker"). Beecker, formerly of New Britain and Chalfont, Pennsylvania, died May 29, 1975. The Estate is currently in probate in Bucks County.

Plaintiffs brought this action under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202 (1976) and 28 U.S.C. § 1338(a) (1976). They seek, *inter alia*, declaratory and injunctive relief to the effect that defendant's patent for tapered sectional support poles is invalid, that their actions do not infringe the patent, and that defendant may not threaten or maintain an infringement action against them or their customers for alleged infringement of the patent. Beecker has moved, pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6), to dismiss the complaint on the grounds that (1) plaintiffs' claims do not arise under the patent laws of the United States; (2) no "actual controversy" exists between the parties with respect to the validity of the patent; and (3) the complaint fails to state a claim upon which relief can be granted and is barred under the doctrine of laches. We agree with defendant that subject matter jurisdiction is lacking, and we dismiss the complaint for that reason.

On September 6, 1966, Beecker was granted United States Patent 3,270,480, entitled Tapered Sectional Support Pole. On December 1, 1966, he entered into a license agreement with plaintiffs that gave Poles an exclusive license to manufacture poles covered by the patent and that gave Keegan the exclusive right to sell and distribute them. In exchange for the exclusive licensing arrangements, royalty payments to Beecker were provided for by the agreement. The terms of the agreement have subsequently been modified in ways not relevant to this case. The original agree-

ment specified conditions upon which Beecker could divest Poles of its exclusive license. The agreement made no provision, however, for the termination of the agreement with Beecker by the plaintiffs.

Plaintiffs allege that Poles made royalty payments until approximately January 1, 1975.[1] They now allege, however, that the patent is "invalid, unenforceable and void" and that they brought this invalidity to the defendant's attention. Plaintiffs claim that in the face of these contentions, defendant allegedly "threatened suit against Poles and Keegan for royalties allegedly due under said License." Complaint ¶ 10. Plaintiffs now seek a declaratory judgment that the patent is invalid, that they are not infringing it, and that defendant is without right or authority "to threaten or to maintain suit against plaintiffs or their customers for alleged infringement of said Patent."

We note initially that diversity of citizenship is not alleged as a basis for jurisdiction in this case. Therefore, if jurisdiction exists in this case, it must be based on 28 U.S.C. § 1338(a) (1976). That section provides that

> The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trade-marks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases.

Our inquiry must therefore focus on whether plaintiffs' claim "arises under" the patent laws. If it does not, it is not a case within our jurisdiction upon which we can issue declaratory relief. 28 U.S.C. § 2201 (1976).

Suits for declaratory relief in the patent area can raise particularly vexing problems. We believe that our task in this case is made easier, however, by the guidance provided by the Third Circuit in *Thiokol Chemical Corp. v. Burlington Industries, Inc.*, 448 F.2d 1328 (3d Cir. 1971), *cert. denied*, 404 U.S. 1019, 92 S.Ct. 684, 30 L.Ed.2d 668 (1972). In that case the court considered two rulings by the district court on motions to dismiss declaratory judgment actions between the same parties. In the first, *Thiokol Chemical Corp. v. Burlington Industries, Inc.*, 313 F.Supp. 253 (D.Del.1970), *aff'd*, 448 F.2d 1328 (3d Cir. 1971), *cert. denied*, 404 U.S. 1019, 92 S.Ct. 684, 30 L.Ed.2d 668 (1972) (hereinafter *Thiokol I*) Judge Wright granted defendants' motion to dismiss. In that case, as in the instant action, jurisdiction was based on § 1338(a); there was no diversity of citizenship; a licensing agreement was in effect between the parties at the time suit was brought.[2] Judge Wright pointed out that the licensing agreement precluded a suit for infringement because "[t]here are three situations only when a licensee could be charged with infringement: (a) the allegedly infringing devices are not covered by the license; (b) the license has expired; or (c) plaintiff has repudiated the license." 313 F.Supp. at 255. Because none of these possibilities was present in the case before him, Judge Wright observed that "[t]he only action which the defendant could bring against the plaintiff at the time this litigation was commenced was a contract suit in the state court." *Id.* at 256. Given this posture of the case, the judge turned to the Supreme Court's language in *Public Service Comm'n. v. Wycoff Co.*, 344 U.S. 237, 248, 73 S.Ct. 236, 97 L.Ed. 291 (1952):

---

1. Defendant contended in its memorandum and at oral argument that payments were made as recently as July, 1977. Resolution of this issue is not essential for our disposition of the motion.

2. At oral argument plaintiffs attempted to distinguish *Thiokol I* on the ground that there was a pending state court action in that case. We note that the state court action was instituted after the federal complaint in *Thiokol I* had

been filed. There is no suggestion in the opinion of the district court dismissing the complaint, or in the opinion of the Third Circuit affirming that dismissal, that the existence of a state court action figured in any way in the decision to dismiss the complaint. We do not believe, therefore, that the absence of a state court suit in this case compels a finding of jurisdiction.

Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court.

313 F.Supp. at 256, *quoting Public Service Comm'n. v. Wycoff Co.*, 344 U.S. 237, 248, 73 S.Ct. 236, 97 L.Ed. 291 (1952). Because the state action was for breach of contract, the controversy did not arise under the patent laws, and the district court lacked jurisdiction. The Third Circuit affirmed the dismissal of the complaint. *Thiokol, supra,* 448 F.2d at 1331.

In the meanwhile, the defendants in *Thiokol I* filed suit in state court for royalties on the license, and the "licensing agreement was terminated under procedure provided by the agreement itself." *Id.* The licensee again filed in the district court for declaratory relief. In the second instance the defendants' motion to dismiss was denied. *Thiokol Chemical Corp. v. Burlington Industries, Inc.*, 319 F.Supp. 218 (D.Del. 1970), *aff'd with instructions*, 448 F.2d 1328, *cert. denied*, 404 U.S. 1019, 92 S.Ct. 684, 30 L.Ed.2d 662 (1972) (hereinafter *Thiokol II*). In affirming the denial of the motion to dismiss, the Third Circuit noted that "[t]he termination of the license agreement removed the obstacle to federal jurisdiction that precluded the maintenance of the first suit." 448 F.2d at 1331. The distinction between the two motions in *Thiokol* therefore seems to be that the termination of the licensing agreement opened the licensee to a possible infringement suit, which would necessarily arise under the patent laws. Given a justiciable controversy between the parties concerning the patents' validity and infringement, the plaintiff's declaratory judgment action in *Thiokol II* was therefore properly cognizable by the district court.

▮ We believe that the case before us is controlled by the decision of the Third Circuit affirming *Thiokol I.* As in that case, there is no diversity of citizenship here; plaintiffs are protected from an infringement action by the licensing agreement; the only action defendant could bring against them is a suit on the license in state court. There is no allegation in the complaint that defendant has terminated the licensing agreement, or even threatened to do so. There is no allegation that defendant has threatened to sue for infringement. The most that defendant could do at the time this action was filed was to sue in state court, and plaintiff may not use the Federal Declaratory Judgment Act to establish a defense to a potential state claim. "[W]here diversity is lacking, a patent licensee's declaratory complaint which asserts patent invalidity simply to avoid the obligations of the license does not state a claim arising under the patent laws within the meaning of 28 U.S.C. § 1338(a)." *Milprint, Inc. v. Curwood, Inc.*, 562 F.2d 418, 422 (7th Cir. 1977).

▮ Plaintiffs contend that *Thiokol* does not control this case, and that even if it were applicable to the facts of this case, its holding is against the weight of authority in other courts. Plaintiffs' first argument implies that by not paying royalties and by informing defendant of the alleged invalidity, plaintiffs have effectively terminated the licensing agreement. We note that the term of a license, if unspecified by the parties, is for the original term of the patent, but an express agreement of the parties to the contrary will control. 69 C.J.S. Patents § 252 (1951). In the absence of provisions for termination, a licensee cannot terminate the agreement without consent. *United Mfg. & Service Co. v. Holwin Corp.*, 187 F.2d 902 (7th Cir. 1951); *Automatic Radio Mfg. Co. v. Hazeltine Research, Inc.*, 176 F.2d 799 (1st Cir. 1949), *aff'd*, 339 U.S. 827, 70 S.Ct. 894, 94 L.Ed. 1312 (1950); *Ohio Citizens Trust Co. v. Air-Way Electric Appliance Corp.*, 56 F.Supp. 1010 (N.D.Ohio 1944); *Bassani Processes, Inc. v. Edward Stern & Co.*, 125 Pa.Super. 537, 189 A. 539 (1937). In any event, we do not believe that plaintiffs'.actions are sufficient to confer federal jurisdiction. Rather, they merely serve to suggest the same fact pattern found in *Thiokol I*, which did not support jurisdiction. In that case, as in this one, plaintiff notified the licensor prior to commencing the declaratory action that it would make no further royalty payments.

*Thiokol I, supra,* 313 F.Supp. at 254. More significantly, in affirming the dismissal of the complaint in that case, the Third Circuit noted:

> Plaintiff suggests in its brief that defendants, relying on plaintiff's refusal to pay royalties as a repudiation of contract, might terminate the license and then move against plaintiff and its vendees as infringers. But there is no allegation or indication that defendants have proposed or threatened to follow that course.

*Thiokol, supra,* 448 F.2d at 1330 n. 2. Similarly, there is no allegation in this case, nor does the affidavit of plaintiffs' counsel suggest, that defendant has threatened to terminate the licensing agreement and sue for infringement. The complaint specifies that the suit threatened was for royalties on the license. Complaint ¶ 10. We do not believe that plaintiffs have succeeded in taking this case out of the rule expounded in *Thiokol.*

One factual distinction between this case and *Thiokol I* is that, although the license there had not been terminated, the power to terminate the license was not exclusively in the hands of the licensor. Here the licensee cannot terminate the license unilaterally. Plaintiffs argue that it would be unwise to find jurisdiction in *Thiokol II,* where the licensee had the ability to and did terminate the license, and deny it here. It may well be that when the parties negotiated the licensing agreement in this case that they did not realize the implications it might have for granting or denying federal jurisdiction in this situation, but the fact remains that the obstacle to federal jurisdiction noted in *Thiokol* was the existence of the licensing agreement, and an agreement is still in effect in this case. We do not believe that plaintiffs' inability to terminate the agreement unilaterally compels a different result on the jurisdictional question than was reached in *Thiokol.* To the extent that this difference does suggest

that a different result might be appropriate, we decline to exercise our discretion in granting declaratory relief to carve an exception to *Thiokol.*[3]

Plaintiffs point out that other courts have questioned the holding of *Thiokol. See Hanes Corp. v. Millard,* 174 U.S.App. D.C. 253, 531 F.2d 585 (1976). It is equally true, however, that other courts have relied on *Thiokol. See Milprint, Inc. v. Curwood, Inc., supra.* We note that the Third Circuit has not overruled *Thiokol. See American Sterilizer Co. v. Sybron Corp.,* 526 F.2d 542, 549 n. 13 (3d Cir. 1975). We are obliged to follow it so long as it is the law of this Circuit.

Plaintiffs have been given an opportunity to establish that federal jurisdiction does exist in this case. We do not believe, however, that its existence has been shown. The complaint will therefore be dismissed under defendant's Rule 12(b)(1) motion for lack of jurisdiction.[4]

---

**3.** Plaintiffs contended at oral argument that policy arguments based on *Lear, Inc. v. Adkins,* 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969), require a finding of jurisdiction in this case. We cannot agree that *Lear* provides a basis for ignoring *Thiokol* since the *Lear* decision was discussed by both the district court and the Third Circuit in *Thiokol.*

**4.** For a discussion of the differences between 12(b)(1) and 12(b)(6) motions, *see Mortensen v. First Federal Savings & Loan Ass'n,* 549 F.2d 884 (3d Cir. 1977).