## ST. PAUL PLOW WORKS *v.* STARLING.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MINNESOTA.

No. 329.   Argued April 20, 21, 1891. — Decided May 11, 1891.

By a written agreement signed by both parties, a patentee of a plow granted to another person the right to make and sell the patented plow under the patent, in a specified territory, the latter agreeing to make the plows in a good and workmanlike manner, and advertise and sell them in the usual manner, and at a price not to exceed the usual price, and account twice a year for all plows sold, and pay a specified royalty for each plow sold. After making and selling some plows, the grantee gave notice to the patentee, that he renounced the license. But he afterwards made and sold plows embracing a claim of the patent. The patentee sued him to recover the agreed royalty on those plows. He set up in defence want of novelty and of utility. The case was tried by the court without a jury, which found for the plaintiff on novelty and utility, and gave judgment for him for the amount of the license fees; *Held,*

  (1) The license continued for the life of the patent;
  (2) The defendant could not renounce the license except by mutual consent or by the fault of the plaintiff;
  (3) The plaintiff had a right to regard the license as still in force and to sue for the royalties;
  (4) This court could not review the finding that the invention was new.

The ruling out of certain evidence was a matter of discretion, and some of it was immaterial.

After the defendant put in evidence earlier patents on the issue of want of novelty, it was proper for the plaintiff to show that, before the date of any of them, he had reduced his invention to practice in a working form.

THIS was an action at law, brought in the Circuit Court of the United States for the District of Minnesota, by William Starling, a citizen of Nebraska, against the St. Paul Plow Works, a corporation of Minnesota.

The complaint alleged that the plaintiff obtained letters patent of the United States, No. 154,293, issued to him August 18, 1874, for an improvement in sulky plows, of which he was the original and first inventor, and that on the 17th of December, 1877, the following contract in writing was executed and delivered by him and the defendant : "This indenture, made on this 17th, day of December, A.D. 1877, between Wm. Starling, of the town of Princeton, Bureau Co., Illinois, of the first part, and the St. Paul Plow Works of St. Paul, Minnesota, of the second part, witnesseth : That the party of the first part does hereby grant to the party of the second part the right to make and sell the Starling sulky plow under patent number 154,293, dated August 18th, 1874, in the following territory, viz. : Wisconsin, Minnesota, Dakota and all that part of Iowa north of the Northwestern railway and all that territory west and north of above described territory. In consideration of the above grant the party of the second part agrees to make said sulky plows in a good and workmanlike manner, and advertise and sell them in the usual manner, and at a price not to exceed the usual price of this class of implements sold by other manufacturers, and render an account on the first day of January and July of each year, of all plows sold prior to those dates on which the royalty has not been paid, and pay to the party of the first part, his heirs or assigns, two and fifty one-hundredths dollars for each and every plow sold, said royalty for spring sales to be paid July 1st and for fall sales January 1st of each year. The party of the first part also grants to the party of the second part the right to make and sell the improvement in whiffletrees under patent 151,804, in consideration of which the party of the second part agrees to pay the party of the first part, at the time of the payment of the royalty for the sulky plows, and in the same manner, the sum of one cent for every pound of said irons used or sold."

The complaint also averred that the defendant had failed to comply with the agreement, had rendered but two accounts to the plaintiff of plows made by it under the contract, the first one in July, 1878, and the second in January, 1879, and

had never paid to the plaintiff any of the agreed royalty except on the plows so reported in said accounts, but had made and sold great numbers of said sulky plows since the date of the contract, for which it had never accounted to the plaintiff; nor paid any royalty, a portion of them being made and sold under the name of " Starling sulky plow," by which name the patented plow was known at the date of the contract, and the greater part whereof were made and sold under the name of " Star sulky plow," with slight modifications of construction from that of the Starling sulky plow, but which were in fact the plaintiff's said plow, the making and selling whereof was so licensed to the defendant, the defendant falsely alleging the same not to be the plaintiff's said plow, for the purpose of defrauding the plaintiff of his said royalty. The plaintiff claimed $10,000 damages.

The defendant filed an answer, which set up want of novelty in the patent and want of utility in the invention, and specified six prior patents as having described the alleged improvements of the plaintiff. It admitted the execution of the agreement between the parties, and denied any liability on the part of the defendant. It alleged that it had made and sold a sulky plow under the name of the " Star sulky plow," constructed on an entirely different principle from that described in and covered by the plaintiff's patent, and that on or about December 5, 1878, it gave to the plaintiff due written notice that the construction of said sulky plow under the plaintiff's patent was unsatisfactory, that a large proportion of those made and sold had been returned to the defendant as unserviceable, and that it would thereafter manufacture a sulky plow of its own design, and renounce its license and all claim of right to construct plows in accordance with the plaintiff's patent, and would construct and sell no more; and that since that date it had not made or sold any plows under said license or in accordance with the alleged invention of the plaintiff.

To this answer there was a reply, admitting that about December, 1878, the plaintiff received letters from the defendant, in which the latter stated that it had decided not to continue

manufacturing the plaintiff's said plow; but denying that such notice was of any force or effect, and alleging that any difficulty which the defendant had in selling and introducing the plaintiff's plow arose wholly from the failure of the defendant to perform the conditions of the said contract; and denying the other allegations of the answer.

A trial by jury was duly waived, and the case was tried by the court. There appears in the record a statement that on the 8th of February, 1887, "an opinion was filed in this cause, which said opinion and order pursuant thereto are in the words and figures following, viz." Then follows a paper which is headed "Opinion." This opinion is reported in 29 Fed. Rep. 790. It contained the following statement: "After the defendant had manufactured and sold between thirty-five and forty plows under the license, and on or about December 5, 1878, written notice was given the plaintiff that the construction of the sulky plow was unsatisfactory and useless, and many had been returned as unserviceable, and that the defendant would thereafter manufacture a sulky plow of its own design, and renounced its license. The defendant, after the notice, rendered an account up to January 1st, and since then has manufactured about 960 plows, called Star plow, designed by Berthiaume, and about 350 plows called the Harris plow." The opinion concludes with these words: "The conclusion is that the plaintiff is entitled to a royalty on 1310 plows at $2.50 each, making the amount of $3275, for which sum judgment is ordered." There is no finding of facts separate from such findings as the opinion contains. The "order pursuant thereto," made February 8, 1887, is headed "Order pursuant to opinion," and states that the action was tried by the court, and that the court "files its written decision and findings in favor of the plaintiff and against the defendant, viz.: 'That the plaintiff is entitled to the royalty on 1310 plows at $2.50 each, making the amount of $3275.'" The order then stays the entry of judgment for forty days.

On the 14th of March, 1887, the defendant filed a motion for a new trial, which was heard by the court, and was denied

on the 10th of October, 1887, in an opinion reported in 32 Fed. Rep. 290. On the same day, a judgment was entered, which recited that a jury had been duly waived and the cause had been tried by the court, and the court, on February 8, 1887, had filed its written findings, ".wherein it finds for the plaintiff as follows, to wit : ' The plaintiff is entitled to a royalty on 1310 plows at $2.50 each, making the amount of $3275, for which sum judgment is ordered,'" that the entry of judgment pursuant to the findings had been stayed pending the hearing of the defendant's motion for a new trial, and that that motion had been made and denied; and the judgment proceeded to order that the plaintiff recover from the defendant "the aforesaid sum of $3275 so found to be due by the court, with interest thereon from the date of said findings, to wit, February 8th, 1887, being $154.10, and all amounting to $3429.10, besides plaintiff's costs and disbursements herein to be taxed, and that he have execution therefor." To review this judgment, the defendant brought a writ of error. A motion to dismiss the writ for want of jurisdiction was made at October term, 1887, 127 U. S. 376, and was denied on the ground that the case was one " touching patent rights," under § 699 of the Revised Statutes, and, therefore, the writ would lie without regard to the sum in dispute.

There was a bill of exceptions, which stated that the plaintiff offered in evidence his letters patent, No. 154,293 ; that it was admitted by the pleadings, proved on the trial, and found to be a fact by the judge, that on or about the 5th of December, 1878, after the defendant had manufactured and sold about 35 or 40 plows under the license, it gave to the plaintiff written notice that the construction of the sulky plow under the plaintiff's patent was unsatisfactory, and large quantities of said plows had been returned as unserviceable, and that the defendant renounced its license and would thereafter manufacture a sulky plow of its own design ; that the plaintiff offered evidence tending to show that, after defendant renounced its license, it manufactured and sold 960 plows called the Berthiaume plow and 350 plows called the Harris plow ; that the defendant objected to this evidence as incompetent

and immaterial, on the grounds that the plaintiff could not recover for those plows on the contract of license after it had been renounced, that the Berthiaume and Harris plows were not similar to the plaintiff's and were manufactured under other patents, and that the character of those plows was indicated and described in the prior patents pleaded in the answer; that the court overruled the objections and the defendant excepted; that the plaintiff then offered evidence tending to show that the defendant, after it renounced the license, did not advertise the Starling sulky plow in the usual manner; that the defendant objected to that evidence that it was incompetent, immaterial and irrelevant, on the ground that the license had been renounced and the defendant was not bound to advertise thereafter; that the court overruled the objection and received the evidence, and the defendant excepted; that the plaintiff offered evidence tending to prove that two Starling plows made by the defendant according to the plaintiff's patent were sold by it after said notice was given to the plaintiff, for which the defendant did not account and pay royalty to the plaintiff; that the defendant objected to this evidence as immaterial and incompetent, because it was after it had notified the plaintiff that it had done with manufacturing his plows; and that the court overruled this objection and the defendant excepted.

The bill of exceptions then set forth the evidence of several witnesses produced by the respective parties, and several patents introduced by the defendant, being the six patents set up in the answer and two others.   When the six patents were offered in evidence by the defendant, it was stated that the object of offering them was to prove that the plaintiff's invention was not novel.   The plaintiff then and there objected to them, on the ground that the defendant was estopped from denying the validity of the plaintiff's patent; but the objection was overruled and the plaintiff excepted, and the patents were received in evidence.

The bill of exceptions, at its close, stated that " the court made the following rulings, contained in the opinion which follows below, and ordered judgment against the defendant

for thirty-two hundred and seventy-five dollars," and that "the opinion was as follows." Then followed the opinion, in the same words previously set out in the record, which, after the paragraph before quoted from it, proceeds to describe the plaintiff's invention as authorized to be manufactured and sold by the defendant, and recites the first two claims of the plaintiff's patent, there being three claims in all. It then said: "1. I find that the defendant could not, without the consent of the plaintiff, terminate the rights conferred by the license, and, there being no limitation on its face, the license continued until the expiration of the present letters patent. 2. The Starling plow is of utility and an operative machine, although it might work better in some soils than in others. 3. I find that the first claim of the plaintiff is manifestly infringed in the Berthiaume and Harris plows, so designated, and the mechanism used is only such mechanical change as increases the power of the lever from a single to a compound action, reversing its movement from a lever moving forward to one pulled towards the driver. In the Berthiaume plow a perforated segment and a spring dog are used, in connection with which the lever operates to raise and lower the plow and beam, which are mechanical changes and equivalents only. In the Harris plow substantially the same device is used. While in the Berthiaume plow the device used for depressing the plow-beam in front is unlike Starling's, the change in that particular would not defeat the right of plaintiff to an action for breach of contract. 4. I have hesitated about going into the question of novelty, but there being in the contract of license no recital or admission that plaintiff had invented the improvement in sulky plows, and the plaintiff having joined issue on the defence of want of novelty set up in the answer, and not pleaded an estoppel, I have reluctantly allowed the defendant to introduce evidence on that issue, and find that the plaintiff's improvement is not anticipated by any of the patents introduced in evidence."

The opinion then discussed in detail the six prior patents set up in the answer, with the conclusion that no one of those patents had the combination of the plaintiff, for the purposes

described in his patent, or anticipated his invention. Then followed the conclusion set forth as the finding, in the order of February 8, 1887.

The bill of exceptions then stated, that the defendant excepted to the ruling and order directing the judgment for the plaintiff, and to the ruling and conclusion of law, "that the defendant could not, without the consent of the plaintiff, terminate the rights conferred by the license, and, there being no limitation on its face, the license continued until the expiration of the present letters patent," and to the ruling and conclusion of law, that " while in the Berthiaume plow, the device used for depressing the plow-beam in front is unlike Starling's, the change in that particular would not defeat the right of plaintiff to an action for breach of contract," and to each of the rulings and conclusions of law as to each of five of the six prior patents set up in the answer, and to the ruling and conclusion of law that no one of the patents in evidence had the combination of the plaintiff for the purposes described in his patent or anticipated his improvement.

*Mr. Walter H. Sanborn* for plaintiff in error.

We submit that the court below erred in ordering and entering judgment in this suit upon the contract for the $2.50 each upon the 960 Berthiaume plows, and the 350 Harris plows, that were made and sold by the plaintiff in error after the contract or license was renounced by it, and this on the following grounds:

*First.* Because the contract did not bind the defendant in error to grant the privilege of manufacturing or selling any number of Starling sulky plows, or of manufacturing or selling them for any length of time to the plaintiff in error, and did not bind the plaintiff in error to manufacture or sell any number of Starling sulky plows or to manufacture or sell them for any length of time, and was therefore void as to all plows made or sold after either party indicated to the other its unwillingness to longer act under the contract. It was so utterly void that no damages could be recovered from either

party for failing to permit on the one hand the manufacture and sale, or failing to manufacture and sell on the other. *Bailey* v. *Austrian*, 19 Minnesota, 535; *Atkins* v. *Van Buren School Township*, 77 Indiana, 447; Addison on Contracts, Vol. 1, star pages 390, 435, 436; *Williamson* v. *Taylor*, 5 Q. B. (N. S.) 175.

*Second.* Because the contract was a mere naked permit or license which granted no exclusive privilege to the plaintiff in error to make and sell the Starling sulky plow, but left the defendant in error the right to give the same permit to every one else in the territory, and it in no way bound the plaintiff in error not to make and sell as many sulky plows as it chose of other designs or under other patents, and was therefore revocable by Starling and capable of being renounced by the Plow Works at any time.

Hence, when it was renounced on December 6th, 1878, and all the Starling sulky plows made to January 1st, 1879, were paid for, the defendant in error could not recover upon the contract for the 1310 plows made thereafter, which were not Starling sulky plows, but were so different that they contained at most but one of the three elements or claims that distinguished the Starling plow. *Brown* v. *Lapham*, 27 Fed. Rep. 77; *Fetter* v. *Newhall*, 17 Fed. Rep. 841, 844; *Rich* v. *Hotchkiss*, 16 Connecticut, 409, 418; *Moody* v. *Taber*, 1 Banning & Ard. 41, 43; *Bell* v. *McCullough*, 1 Fisher, 380, 381; *Sherman* v. *Champlain Transportation Co.*, 31 Vermont, 162, 180, 181, 182; *White* v. *The S. Harris & Sons Mfg. Co.*, 5 Banning & Ard. 571.

*Third.* Because the contract itself, if not revoked or renounced, only permitted the plaintiff in error to make and sell the *Starling sulky plow.* It only protected him in making and selling that plow, and the making and selling of the Berthiaume and Harris plows was an act in no way covered by the contract or license, and not in any way a breach of that contract. The plaintiff in error had not agreed not to make and sell other plows, but as to these other plows it stood out from under its license, was liable for infringement like any stranger if it infringed the Starling patent, and could defend

against such suits on the same ground that any stranger could defend, but for these other plows the defendant in error could not recover any royalty under the contract, because that was confined to the *Starling sulky plow*, and that alone, and none of these plows contained the distinguishing characteristics of that plow. *Burr* v. *Duryee*, 2 Fisher, 275, 281, 282, 283; *Wood* v. *Wells, Crittenden & Co.*, 6 Fisher, 382, 385.

*Mr. L. L. Bond* also filed a brief for plaintiff in error.

*Mr. Charles S. Cairns* for defendant in error.

Mr. JUSTICE BLATCHFORD, after stating the case, delivered the opinion of the court.

The defendant contends (1) that the contract of December 17, 1877, did not bind the plaintiff to grant to the defendant the privilege of manufacturing or selling any number of Starling sulky plows, or of manufacturing or selling them for any length of time, and did not bind the defendant to manufacture or sell any number of them, or to manufacture or sell them for any length of time, and therefore ceased to be operative as to all plows made or sold after either party indicated to the other its unwillingness to act longer under the contract, and that, therefore, no damages could be recovered from either party for failing on the one hand to permit the manufacture and sale, or, on the other hand, to manufacture and sell; (2) that the contract was a mere naked permit or license which granted no exclusive privilege to the defendant to make and sell the Starling sulky plow, but left to the plaintiff the right to give the same permit to every one else in the specified territory, and in no way bound the defendant not to make and sell as many sulky plows as it chose of other designs or under other patents, and was, therefore, revocable by the plaintiff and capable of being renounced by the defendant at any time, and that the plaintiff could not recover upon the contract for the 1310 plows which were not Starling plows, but were so different that they contained at most but one of the three claims of the plaintiff's patent; (3) that the contract, if not

revoked or renounced, only permitted the defendant to make and sell the Starling sulky plow, that the making and sale of the Berthiaume and Harris plows was not covered by the contract and not a breach of it, and that the defendant was liable for infringement in making and selling other plows if it infringed the plaintiff's patent, and could defend against a suit for infringement on the same ground that any stranger could, and the plaintiff could not recover any royalty under the contract, in respect of such other plows.

It is urged by the defendant in regard to the contract (1) that it does not admit or recite the validity of the plaintiff's patent, but only allows the defendant to make and sell a particular plow under it; (2) that it gives to the defendant that privilege for no stated time and for no stated number of plows, and was, therefore, revocable at any time; (3) that it gives to the defendant no exclusive privilege to make and sell the Starling plow, but leaves the plaintiff the right to give the same privilege to every one else in the territory; (4) that it in no way binds the defendant not to make and sell as many plows of other designs or under other patents as it chooses; (5) that it does not bind the defendant to make or sell any number of Starling plows, or to make or sell them for any length of time; (6) that it is restricted to the Starling sulky plow, and does not authorize the defendant to make or sell any other plow under the patent, nor bind it to pay license fees for the sale of any other plow, but as to all other plows except the Starling sulky plow leaves defendant free to make and sell, subject only to its liability as an infringer in the same way as if there were no contract.

The defendant contends that there is an essential distinction between the contract in the present case and a contract which grants the exclusive right under a patent to make and sell the patented article in a certain territory, or the exclusive right in respect of a certain number of patented machines; that, in the latter case, the contract exists for the life of the patent, while in the present case it does not; and that in the present case the licensee could renounce all right under the license, while in the other case he could not. This ground is main-

tained upon the view that, where the patentee grants an exclusive right, he deprives himself of the privilege of granting any right to others in the given territory; and that, therefore, the exclusive licensee will not be permitted, after he has thus deprived the licensor of his privilege of licensing others, to renounce the license and thus damage the licensor, while that reason does not exist under a contract or license like that in the present case.

But we think that this attempted distinction is fanciful and not sound. Irrespectively of the point that it might well be urged that the plaintiff, in granting to the defendant "*the* right to make and sell the Starling sulky plow under patent No. 154,293," did not grant simply *a* right, but granted *the* right, that is, all the right which the plaintiff had, under the patent, to make and sell the plow in the specified territory, we are of opinion that the Circuit Court was correct in holding that the defendant could not terminate, without the consent of the plaintiff, the rights conferred by the license, and that, as there was no limitation on its face, the license continued until the expiration of the patent. The contract has no provision for its termination or its renunciation. The grant is of the right to make and sell the Starling sulky plow under the patent, that is, under the patent so long as it is a patent, for the whole term of its duration. For plows made and sold under the patent, and in accordance with any of its claims, the defendant, at all times during the existence of the patent, could set up the contract as a defence against a claim for infringement, and limit its liability for plows made and sold in accordance with any one or more of the claims of the patent, to the royalty fixed by the terms of the contract. In consideration of the grant, the defendant bound itself to make the plows in a good and workmanlike manner, and to advertise and sell them in the usual manner and at the price specified, as limited, and to render accounts and pay royalties as agreed.

The Circuit Court finds that the Starling plow "is of utility and an operative machine, although it might work better in some soils than in others." It, therefore, finds against the defendant as to the ground set up in the notice which the de-

fendant gave, that the construction of the plow under the patent was unsatisfactory. The fact that the defendant continued, after the alleged renunciation, to make and sell the plow with features embodying the first claim of the patent, and that the plow so made was successful and salable, indicates that the notice was a mere pretence, and that the defendant continued to act under the license, or else that the allegation that the construction of the plow was unsatisfactory was founded upon something in the workmanship, and not in the inherent character of the patented improvement.

We are of opinion that the license, in the absence of a stipulation providing for its revocation, was not revocable by the defendant, except by mutual consent or by the fault of the other party. If the plaintiff, after receiving the notice, had sued the defendant for infringement, he would have been properly regarded as acquiescing in the renunciation; but, instead of that, he elected to regard the license as still in force, and brought an action to recover the royalties provided for by it, which he was entitled to do. *Marsh* v. *Harris Mfg. Co.*, 63 Wisconsin, 276; *Patterson's Appeal*, 99 Penn. St. 521; *Union Mfg. Co.* v. *Lounsbury*, 41 N. Y. 363.

The defendant could not coerce the plaintiff into putting an end to the contract, by the means it adopted. It must bring a suit to set aside the contract before it can be allowed to say that, in regard to what it afterwards does, it does not act under the contract, provided the machines it makes embody a claim of the patent. Notwithstanding the defendant gave notice that it renounced the license, yet it did not in fact renounce it, for it continued to make plows embodying one of the claims of the patent. The Circuit Court found that the first claim of the plaintiff's patent was infringed in the 1310 plows, and that the changes made in those plows were mechanical changes and equivalents only, which would not defeat the right of the plaintiff to an action for breach of contract.

We cannot review the finding of the Circuit Court that none of the earlier patents put in evidence by the defendant anticipated the plaintiff's invention. Although the defendant excepted to this finding as a conclusion of law, yet it was really

a conclusion of fact on the evidence which the Circuit Court had before it. Witnesses were summoned on both sides as to what the earlier patents showed; and we cannot consider the evidence, as if this were a suit in equity.

After the defendant had introduced the alleged anticipating patents, and examined three expert witnesses in regard to them, the plaintiff rebutted such evidence by two expert witnesses. The defendant then offered further evidence to show why its contention as to the question of novelty was correct, but the court refused to permit this to be done, stating that it had heard sufficient testimony to enable it to understand the operation of the different devices, to which ruling the defendant excepted. This is assigned for error. But we are of opinion that it was a matter within the discretion of the Circuit Court. The defendant had had an opportunity of taking the testimony in question when it examined its three expert witnesses.

After the plaintiff had introduced evidence tending to show that his plow, properly made, was practical and successful, and the defendant had introduced evidence for the purpose of showing that the plaintiff's plow, well constructed, was unsalable, while the Berthiaume and Harris plows made by it were salable, the court refused to permit the defendant to show by one Carter, a practical dealer in plows, that he sold a plow substantially the same as the Berthiaume plow for $45, in competition with a plow substantially the same as the plaintiff's plow at $25, and was able to sell the former without difficulty, while the latter had no sale. The evidence was excluded as immaterial and the defendant excepted. The court found as a fact that the so-called Berthiaume plow was substantially the plaintiff's plow. The offer of evidence amounted merely to showing that one person could sell a plow for $45, while another person could not sell substantially the same plow for $25. This was certainly immaterial on any issue in the case. Moreover, both parties had gone through their testimony, and the plaintiff had given evidence in rebuttal, and it was after that that this offer was made. It was discretionary with the court whether to admit the evidence or not, as the defendant had before had an opportunity to give it.

The plaintiff, in rebuttal of the defendant's principal evidence, offered proof tending to show that he first constructed a plow containing the elements of the first claim of his patent, before the date of the earliest patent introduced by the defendant on the question of novelty. The defendant objected to this evidence as immaterial, and that it was a part of the plaintiff's case in chief; but the court overruled the objection, and the defendant excepted. After the defendant had introduced in evidence the earlier patents, it was proper for the plaintiff to show that, prior to the date of any of them, he had reduced the invention covered by his first claim to practice, in a working form. *Elizabeth* v. *Pavement Company*, 97 U. S. 126, 130; *Loom Company* v. *Higgins*, 105 U. S. 580, 592. Proof of the date of the plaintiff's invention was strictly a matter of rebuttal, after the defendant had put in the patents which were prior in date to the plaintiff's patent. The defendant might afterwards have offered evidence on the same point.

The defendant, in its principal testimony, offered to show by a witness that the lever device shown in the plaintiff's patent, and substantially the same as that shown in his model, was used on two sulky plows prior to 1872. The plaintiff objected to the evidence as incompetent and immaterial, and because the fact had not been set up in the answer; the objections were sustained, and the defendant excepted. We think the evidence was immaterial. There was no offer to prove that the lever device was so combined that the combination operated in the same way, for the same purposes, as in the first claim of the plaintiff's patent.

These are all the matters alleged on the part of the defendant which we think it important to notice.

We find no error in the record, and the judgment is

*Affirmed.*

MR. JUSTICE BRADLEY did not sit in this case or take any part in its decision.