### HUNT *v.* MOLINE PLOW Co.

*(Circuit Court, N. D. Illinois, S. D.* October 31, 1892.)

PATENTS FOR INVENTIONS—LICENSE—ROYALTY—RESCISSION OF CONTRACT.

Before the issue of a patent the patentee agreed to grant an exclusive license to manufacture under it, in consideration of the licensee's agreement to pay a certain royalty, the agreement providing that, if the licensee should decide at any time not to continue making the patented device, then the license and the agreement should be surrendered without damage to either party. The licensee, having found that the patent, when issued, did not include all the claims he supposed it did, notified the patentee that he could not go on with the contract, paid him royalty on all the machines made up to that time, and proceeded to make others under a different patent, embodying substantial changes in the machine. *Held,* that the patentee was not entitled to royalty after he received said notice.

In Equity. Suit by Homer H. Hunt against the Moline Plow Company for an accounting for royalties for the use of a patent. Bill dismissed.

*John G. Manahan,* for complainant.

*Bond, Adams & Pickard,* for defendant.

BLODGETT, District Judge. The bill in this case seeks an accounting from the defendant to the complainant for the use of a patent, of which the complainant is assignee, granted to George W. Hunt, September 25, 1883, for a "wheel plow." The facts as they appear from the proof are substantially these: The patent in question was applied for by George W. Hunt on the 14th of December, 1882, and in the spring of 1883, some time in April, he brought to the shop of the defendant in Moline, Ill., a plow, which he represented was constructed in accordance with his patent. Some of the officers and managers of the defendant examined the plow, and from that inspection concluded that it would be a useful and profitable plow for the defendant to manufacture; and after some negotiation the parties entered into an agreement, which is called "Exhibit D" in the proofs, in the following words:

"This agreement, made and entered into by and between George W. Hunt, of Muscatine, Iowa, and Moline Plow Co., of Moline, Ill., witnesseth, that whereas, said Geo. W. Hunt is the inventor of a sulky or wheel plow, an application for patent on which was officially allowed on March 2nd, 1883, and whereas, said Moline Plow Co. are desirous of manufacturing said wheel plow, it is hereby agreed that when the above-mentioned patent is issued to said Geo. W. Hunt he shall immediately issue to said Moline Plow Co. a license for the exclusive manufacture of said wheel plows under said patent in all parts of the United States; also for Manitoba and Northwest Territory, if patent is issued in Canada. In consideration of the granting of said license, and the exclusive right to manufacture said wheel plow in territory above described, for the full term of life of said patents, the said Moline Plow Co. agree to manufacture a sufficient number of said wheel plows to supply the demand for them in said territory, so far as they are able; and they further agree to pay to said Geo. W. Hunt a royalty of one dollar ($1.00) on each wheel plow manufactured and sold until one thousand of said wheel plows shall be sold, and a royalty of fifty cents (50 cts.) each on any number of said wheel plows that may be made and sold by said Moline Plow Company during the life-time of said patent in addition to the above-mentioned one thousand wheel plows. The royalty herein provided for shall be due and payable on Jan'y first and July first of each year, at which times the royalty for the total number of wheel plows manufactured under said patent and sold by the Moline Plow Co. during the previous six (6) months shall become due. It is further agreed that the Moline Plow Co. shall have a reasonable and sufficient time in which to test the value and desirability of said wheel plow as an implement to manufacture and sell, and, if they shall decide at any time that they do not wish to continue the manufacture and sale of said wheel plow, then this contract, or any lease or license issued under it, shall be surrendered to said Geo. W. Hunt, without damage to either party. And it is further agreed that the said Geo. W. Hunt shall defend any suit or suits that may be commenced or entered on account of the manufacture or sale of said wheel plow in the territory above mentioned, because of any claim that it may be an infringement of any other patent or patents. Witness our hands this twenty-first (21st) day of April, A. D. 1883.

"G. W. HUNT.
"MOLINE PLOW CO.
"C. A. BAKER, Secy. & Treas."

Soon after this instrument was executed the defendant commenced the manufacture of plows in accordance with the sample plow which had been brought to defendant's shops as aforesaid, and made about 100 plows, which were put upon the market, embodying substantially the features and elements which were shown in the sample plow which Hunt had furnished to the defendant. The proof clearly shows that the features in the Hunt plow which attracted the attention of the officers of the defendant, and induced them to enter upon its manufacture, were the hinging or pivoting of the heel of the land side to rigid standards extending up from the land side to the beam, and the device shown in the patent, by which the nose or point of the plow could be raised or lowered by means of another standard attached to the plowshare nearer to its point, by means of a combination of levers working with the last-mentioned standard; the defendant's managers being of opinion, from an inspection of these features of the plow, that this pivoting at the rear of the land side was a valuable improvement in the plow art. The is-

sue of the patent for some reason was delayed until the 25th of September, 1883; and, after the patent came out, and was examined by the officers of the defendant, it was apparent that it did not cover the features which they deemed the most valuable in the organization of the plow, the patent having but one claim, and that being in these words:

"In a wheel plow, the combination with the slotted plow beam, D', and the movable forward standard, U, of the levers, W and *a*, connecting rods, V, Z, the rack bar, X, and its catch plate, Y, substantially as herein shown and described, whereby the plow point can be readily raised and lowered, and will be securely held, as set forth."

It will be readily seen from this claim that it does not cover the pivotal joint at the heel of the land side, by which the share was attached to the frame of the plow, and from which it received its propelling force, and by which its running depth at the heel was regulated, but that the claim of the patent only covers the levers and standard by which the point of the plow is raised and lowered. After inspecting the patent, and consulting counsel, and being advised that the patent did not cover this feature of attaching the land side to the rigid standard by a pivot joint, the defendant notified George W. Hunt that they could not proceed with the manufacture of the plow under the contract. The proof also shows that the lot of plows which the defendant had manufactured prior to the issue of the patent were put upon the market and sold, but that they were unsatisfactory to purchasers, and were all returned to the defendant after a short trial and use; the chief fault found with them being that the lever device, by which the point of the plow was raised and lowered, and by which it was assumed the point would be held in the ground, was wholly insufficient and inoperative for that purpose, not by reason of faults of mechanical construction, but by reason of radical defects in the principle upon which such levers worked. It also appears from the proof that George W. Hunt, shortly after receiving the patent, assigned the same to the present complainant, his son, Homer H. Hunt, and that no license to manufacture under the patent was ever given or offered by said George W. Hunt or the complainant to the defendant; that some time after the complainant had become the owner of the patent he was at the defendant's shop, and, after some discussion, a copy of the contract, which I have quoted, which the defendant had made with George W. Hunt, was thrown upon the table by the complainant, and marked "canceled," either by himself or the secretary of the defendant in his presence, and left there in the defendant's office, and that the secretary of the defendant company, who participated in the discussion with the complainant at that time, also at the same time marked the defendant's copy of said contract "canceled;" that about the 7th of January, 1885, defendant received a letter from the complainant, which stated, in substance, that if he heard nothing satisfactory from the defendant by the 11th day of that month he should proceed, without further notice, to lease to some other company the right to manufacture said wheel plow, and should consider, "if you make no objection at that time, that you have no objection against my licensing to another

company." The proof also shows that no objections were made in response to this letter, and that defendant acted from that time on upon the assumption that the contract was canceled, and at an end between them. The proof also shows that soon after the officers of the defendant discovered that the Hunt patent did not cover the feature of the plow which it considered most valuable, an attempt was made, at the expense of the defendant, to obtain a reissue of the patent so as to cover such feature, but this attempt was unsuccessful, for the reason that the patent office decided that it was old in the art to hinge the heel of the plow to a fixed standard, substantially like that shown in the sample plow submitted to the defendant by Hunt, and represented by him to illustrate and describe the plow which was covered by his patent, which he stated had been allowed by the patent office. It also appears that, after finding by experience that the lever system of the Hunt patent covered by the claim was wholly useless, a Mr. Bartlett, then in the employ of the defendant, devised another system of levers, entirely different in their organization and operation, for raising the point of the plow, and also for holding it to its work; and that defendant constructed plows after that in a modified form, embodying the land side of the plow, hinged at the heel to the carrying standard, with the Bartlett controlling levers; but soon after putting that plow upon the market they found that the Bartlett device infringed the patent granted to one Rozander S. Higgins on the 25th of September, 1883, and the defendant, in order to continue the manufacture of plows under Bartlett's device, was obliged to purchase the Higgins patent. The changes made by the defendant after it had become apprised of the terms of the patent, and had also learned by experience the inadequacy of the lever devices covered by the patent, are not merely colorable changes, such as were made in the case of Plow Works v. Starling, 140 U. S. 184, 11 Sup. Ct. Rep. 803, but, on the contrary, were radical and substantial changes, embodying new combinations of levers, for which other patents had been granted. The contract between the defendant and George W. Hunt, in regard to the patent, permits the defendant to surrender the contract at any time when it shall decide that it does not wish to continue the manufacture and sale of the plow referred to in the contract; and it is natural and businesslike to assume that, if the patent did not protect the defendant in the exclusive right to make and sell plows with all the valuable features exhibited by the sample plow, then defendant would not wish to manufacture under the contract or a license. It is not necessary, in acting under this clause, that the parties should actually have manually surrendered and canceled this contract, if the conduct of the defendant is such as to manifest a clear and unequivocal intention so to do. The surrender of the contract is as effectually accomplished by notice to George W. Hunt, or to the complainant, that the defendant would not further proceed under the contract, as if the parties had solemnly come together, and either canceled or torn the contract in pieces. After the defendant had satisfied G. W. Hunt, or the complainant, that it would not manufacture plows under the patent, that ended the obligations of

the contract, unless defendant had continued to construct plows embodying the principle of the patent, which the proof shows it did not do.

Undoubtedly the chief inducement of the defendant to enter into this contract was the understanding that George W. Hunt had obtained or would obtain a patent which should protect the defendant in the manufacture of plows embodying substantially all the features which were shown in the plow brought to defendant's shop, and which they adopted as the model for the manufacture of the lot made before the issue of the patent. Unless the patent protected the defendant in this manufacture, certainly the defendant could not afford to pay Hunt or his assigns a royalty upon it; that is, the defendant's officers expected the patent would come and give the exclusive right to make a plow with the heel of the land side pivoted to the rigid standard, T, and combinations of levers and standards by which the point of the plow could be raised and lowered on this pivoted heel. The pivoted heel was not covered by the patent as issued, and could not be in the then state of the art, and the lever device on trial proved to be worthless.

There is some conflict of testimony between the complainant and the defendant as to just what was done in the matter of the actual canceling of this contract, but I have no doubt, from the testimony, that the defendant clearly and unequivocally gave the complainant to understand that it would avail itself, and had availed itself, of its right to cancel and surrender the contract. The proof also shows that the defendant has fully paid to George W. Hunt all the royalty he is entitled to for the first lot of plows manufactured, besides also showing that this royalty, as well as the cost of those plows, was a total loss to the defendant. I am therefore of opinion that no case for an accounting is established by the proof in this case, and the bill must be dismissed for want of equity.