## FITCH v. SHUBERT et al.

District Court, S. D. New York.

May 11, 1937.

Hays, St. John, Abramson & Schulman, of New York City (Sidney Struble, of New York City, of counsel), for plaintiff.

William Klein, of New York City, for defendants Jacob J. Shubert, Lee Shubert, Select Theatres Corporation, Select Operating Corporation, and Shubert Theatres Corporation.

PATTERSON, District Judge.

The plaintiff brought suit in equity for infringement of copyright on the play "Barbara Frietchie, The Frederick Girl." The present question is whether the plaintiff should have preliminary injunction against the defendants other than Columbia Broadcasting System, Inc.

By the affidavits submitted on the motion for preliminary injunction, the following facts appear: Clyde Fitch wrote a play, "Barbara Frietchie, The Frederick Girl," which was copyrighted by Life Publishing Company on March 13, 1900. In 1925 the Shuberts, who had conceived the idea of producing a musical version of the play, acquired from the then owners of the original copyright a license to produce a musical version and agreed to pay certain royalties. The Shuberts employed one Donnelly to write the lyrics and one Romberg to compose the music. The resulting operetta, known as "My Maryland," was first produced in 1927 and met with great success for two or three years. For the last six or seven years, the revenues from the operetta have been small, coming in the main from letting it out for stock performances, for amateur presentations, and for radio broadcasts.

Fitch, the author of the play "Barbara Frietchie, The Frederick Girl," died years before the expiration of the original copyright in 1928. He died intestate, leaving no widow or child. In 1927 the plaintiff, as his next of kin, applied for renewal of the copyright on the play for the further period of twenty-eight years, under section 24 of the Copyright Act (17 U.S.C.A. § 24). Section 24 is to the effect that the copyright in any work subsisting on July 1,

1909, may be renewed to take effect at the expiration of twenty-eight years, such renewal to be by the author if living, otherwise by the widow, widower, children, executors, or next of kin of the author, and the renewal to be for a term of twenty-eight years. The renewal in the plaintiff's name was registered on October 6, 1927.

It was not until 1934 that the plaintiff made known to the defendants his claim of ownership of the Barbara Frietchie play. The defendants were about to put on another production of the operetta "My Maryland." It was then agreed, by exchange of letters of March 26, 1934, and March 29, 1934, that the defendants might produce the operetta on payment of a royalty of 1½ per cent. of the gross receipts. This arrangement did not give the defendants the right to let out the operetta to others for performances. In December, 1935, by further exchange of correspondence, it was agreed that the defendants would pay the plaintiff for future performances 1½ per cent. of gross receipts for first-class stage performing rights, and 25 per cent. of net receipts for stock, amateur, and radio rights, any further accounting for the past being waived by the plaintiff. These agreed payments, except as to radio, were at the same rates as the payments which the Shuberts had been making to the owners of the original copyright under the 1925 agreement down to the time when the plaintiff made claim of ownership. The agreed royalties were thereafter paid to the plaintiff. He threatened to sue the defendants for infringement, however, unless the terms of a new agreement drafted by his lawyer were acceded to. On inability of the parties to agree further, this suit was brought.

In opposition to the injunction, the defendants have brought up a number of points that have no substance. It is said, for one thing, that there is no proof that the play "Barbara Frietchie, The Frederick Girl," was an original dramatic work. But we have long acquiescence, which creates a presumption of the validity of the copyright sufficiently strong in the absence of proof the other way by the defendants; and we have also the recognition of the validity of the copyright by the acknowledgments made by the defendants in their 1925 agreement with the owners of the original copyright, to say nothing of their later acknowledgments to the present plaintiff. Another point urged by the defendants is that the plaintiff has not proved ownership of the copyright for the renewal term. It stands uncontradicted that Clyde Fitch, the author of the work, died prior to the expiration of the original term, leaving no widow or child and without a will; that the plaintiff, a cousin, was his next of kin; and that the plaintiff made application for renewal within one year before the initial term expired. This being the case, it is clear that the plaintiff acquired a new and independent right in the copyright, free and clear of any rights, interests, or licenses attached to the copyright for the initial term. Silverman v. Sunrise Pictures Corporation, 273 F. 909, 19 A.L.R. 289 (C.C. A. 2). It is idle to contend that the plaintiff in order to obtain renewal copyright had to publish the record in a newspaper for four weeks, as had been required under statutes in effect prior to 1909. He was entitled to copyright for the renewal period by complying with section 24 of the 1909 act (17 U.S.C.A. § 24), and that statute he fully complied with. It is evident therefore that all rights which the defendants acquired in 1925 to use the Fitch play as the basis of a musical operetta expired when the copyright for the original term expired in 1928 and when a new grantee appeared as owner of the Fitch play for the renewal term.

The remaining point is whether the defendants, by reason of what went on in 1934 and 1935, now have a license from the plaintiff covering the stage, stock, amateur, and radio rights to the musical version of the play, a license which the plaintiff is not at liberty to revoke or terminate at pleasure. As already mentioned, the plaintiff in 1934 agreed in writing that the defendants might produce the musical version on payment of a specified royalty which they agreed to pay, and the parties in 1935 agreed in writing on specified royalties to be paid on future performances covering the stage, stock, amateur, and radio rights. Nothing was said on either occasion as to the duration of the agreed license. The affidavit of Lee Shubert states that by custom in the theatrical business a license without mention of the term for which it is to endure is taken as a license for the full remaining life of the copyright.

A license to produce a copyrighted play on the spoken stage may well be a perpetual license where the agreement is silent as to duration of the licensee's rights.

316

Manners v. Morosco, 252 U.S. 317, 40 S. Ct. 335, 64 L.Ed. 590. In the analogous case of license under a patent, it is a rule of construction that a license without expressed limit as to time is a license for the unexpired life of the patent. St. Paul Plow-Works v. Starling, 140 U.S. 184, 11 S.Ct. 803, 35 L.Ed. 404. The point is, of course, one dependent primarily on the expressed intention of the parties. In the present case the agreements between the parties were somewhat informal, and it is possible that at the trial, on a full presentation of the facts, the licenses will be shown to have been intended as only temporary, to serve the immediate needs of the parties. If that be the case, either party may terminate the arrangement at pleasure. But in view of the rule of construction referred to and in view of the alleged custom in the theatrical world, it cannot be said that the license given by the plaintiff was one terminable at his will alone. On the contrary, it appears from the face of the writings and from the other proof now before me that the plaintiff has granted the defendants a license for the remainder of the term of the copyright and that the defendants have lived up to their engagements under the license.

The motion for preliminary injunction will be denied.