WILLIAM C. MASON, Respondent, v. ELECTROL, INCORPORATED, Appellant.

Third Department, December 28, 1943.

*N. Levan Haver,* attorney for appellant.

*William A. Glenn,* attorney (*Jay Leo Rothschild* of counsel), for respondent.

CRAPSER, J. By the terms of the agreement the parties undertook reciprocal obligations. The contract did not provide a specified period at which the agreement would terminate. It was a license agreement for the use of patents. A license under a patent without expressed limit as to time is a license for the unexpired life of the patent. (*Koppe* v. *Burnstingle,* 29 F. 2d 923; *Fitch* v. *Shubert,* 20 F. Supp. 314; *St. Paul Plow Works* v. *Starling,* 140 U. S. 184.)

The license agreement was to continue as long as the patent structure underlying it. Paragraph " Seventh " was intended to work a forfeiture of defendant's rights to exploit plaintiff's patents; not to forfeit plaintiff's right to damages for its breach. The termination was for plaintiff's benefit, not defendant's.

The royalty provisions are to be found in paragraph " First " of the agreement. They granted (1) a minimum annual royalty of $2,400 for the life of the license agreement — which, as we have seen, means the life of the patent structure — and (2) for the calendar year 1940, an " additional advance royalty " of $200 per month.

Paragraph " Sixth " of the agreement concerned itself with the period prior to the calendar year 1940, whereas paragraph " Seventh " concerned itself with the period beginning after the calendar year 1940; furthermore paragraph " Seventh " like paragraph " Sixth " terminated the license agreement for defendant's default, for plaintiff's benefit, and did not rescind

it as an award to defendant for a breach of its contract obligation.

The decision of the Special Term is correct and the order appealed from should be affirmed, with costs.

HILL, P. J. (dissenting). Appeal by the defendant from an order denying its motion made under rule 112 of the Rules of Civil Practice for judgment on the pleadings. The complaint is drawn to recover royalties claimed to be due to the plaintiff from the defendant under an agreement dated November 28, 1939, a copy of which is annexed to the complaint, whereunder plaintiff granted to the defendant a license to use his inventions in connection with the manufacture and sale of liquid fuel burners. The minimum annual royalty to be paid during the life of the agreement was $2,400, except that for the year beginning January, 1940, the minimum royalty was to be $4,800. No issue is raised as to unpaid royalties during the latter year. The action involves defendant's failure to pay royalties thereafter and the effect of the failure upon the duration of the agreement.

The contract, *inter alia,* provided for the formation by defendant of a wholly owned corporate subsidiary "Mason Patent Estates" and for the amount to be paid as royalties should the sales ever exceed 110,000 burners per year. It became effective as of January 1, 1940, and would, under certain contingencies, continue while the patent or patents remained effective.

It appears from the pleadings that royalties were not paid after March, 1941. The right of defendant to cancel the contract, that being the relief it seeks, depends upon paragraph "Seventh" of the agreement: "SEVENTH: All rights, privileges and benefits of the respective parties under this License Agreement and the license hereby granted to Electrol and all sub-licenses granted by the 'Mason Patent Estates' shall be terminated and canceled for all purposes without notice in the event Electrol or the 'Mason Patent Estate' shall fail to pay to Mason within sixty (60) days after the expiration of any quarterly period of any year after the calendar year 1940 (quarterly periods beginning on the first day of January, April, July and October of each year) the amount of all royalties to which Mason is entitled for such quarterly period in accordance with the provisions of this License Agreement." The complaint, verified on March 30, 1942, alleges defendant's failure to pay the minimum royalty beginning January 1, 1941, except the sum of $500, and seeks to recover therefor to the commencement of the action, and for an accounting. The answer alleges that defendant failed to pay within sixty days after the

expiration of the quarterly period ending March 31, 1941, the amount of royalties to which plaintiff was entitled for the quarter ending on that date, and admits and pleads that as of June 1, 1941, the date when defendant claims the agreement was canceled through its failure to pay as required by paragraph " Seventh " of the agreement, no royalties earned after January 1st of that year had been paid; after June 1st, $500 was paid leaving a like amount due. The notice of motion herein on behalf of the defendant is for a judgment in favor of the plaintiff for the unpaid royalties of $500 and " in favor of the defendant by otherwise dismissing said second cause of action ".

Under the " Sixth " paragraph of the agreement the plaintiff was permitted to terminate the agreement upon defendant's failure to pay royalties as stipulated, by giving thirty days' notice in writing. The defendant would be excused of this default by making full payment during the thirty days. Immediately following that the " Seventh " paragraph as quoted above states that " All rights, privileges and benefits " of all parties to the agreement shall be terminated without notice in the event Electrol or the " Mason Patent Estates " fail for sixty days to pay plaintiff for any quarterly period after the year 1940. It is unquestioned that as of May 31, 1941, there had been a failure for sixty days by the defendant, and under the unambiguous terms of the agreement, it was canceled on the following first day of June.

It may be unusual for a draftsman to provide for the termination of a contract in the manner here adopted. It would be more unusual to grant to a payee a right to cancel by giving thirty days' notice when the payor was in default, and immediately thereafter to provide for the benefit, again solely of the payee, that the contract would be terminated as provided in the " Seventh " paragraph above quoted; and provide no means by which the payor could be relieved.

The development and sale of patented articles is an uncertain business, more frequently unsuccessful than profitable, and the officers of this defendant would have been venturesome beyond the custom of reasonably prudent men had they bound their corporation to pay $200 a month for the long term of years during which the patent and renewals would have life, when experience has shown the hazard of the development and sale of patented devices. The contract furnished no other means by which an unsuccessful venture could be terminated by the manufacturer, and the plain language of the " Seventh " paragraph should not be tortured and changed to deny the

defendant, who appeals, the relief which it seeks. Defendant would be required to plead performance on its part if it sought to enforce performance by plaintiff. This it is not doing. The relief which it seeks is that the contract be adjudged terminated under a provision thereof that provides termination through its failure to pay. There is no rule of law which would prevent these parties from agreeing to that method of termination of the contract. The intention of the parties, to be ascertained from the writing, controls. Performance by defendant is offered by its tender of the amount of royalties earned before the date of termination fixed by the parties. The order should be reversed, judgment granted to the plaintiff for the $500 with any interest shown to be due thereon, and the complaint otherwise dismissed.

HEFFERNAN and SCHENCK, JJ., concur with CRAPSER, J.; HILL, P. J., dissents in an opinion in which BLISS, J., concurs.

Order appealed from affirmed, with costs. [See *post*, p. 853.]