## NATIONAL SURETY CORPORATION v. HEINBOKEL et al.

### No. 8751.

Circuit Court of Appeals, Third Circuit.

Argued Dec. 3, 1945.

Decided March 4, 1946.

James F. Murray, of New York City (William J. Fitzgerald, of Scranton, Murray, Kissam & Hayden, of New York City, and Fitzgerald & Kelly, of Scranton, on the brief), for appellant.

Reese H. Harris, of Scranton, Pa. (O'Malley, Hill, Harris & Harris, of Scranton, on the brief), for appellees.

Before BIGGS, GOODRICH, and Mc-LAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge.

This is a diversity case in which the plaintiff sued as subrogee of J. H. Brooks & Company, a New York brokerage house. The defendants are accountants and were requested by Brooks & Company to make an audit of its books in 1936 and again in 1939. It was alleged that under practically the same circumstances in both audits the defendants failed to discover and report the theft of certain securities by one Storay, an employee of Brooks & Company. The answer denied any fault on the part of the defendants.

At the trial, Storay testified that in 1936 and 1939 he had, previous to the audit, appropriated certain securities from the security boxes of his firm and used them for his own purposes in connection with a margin account at another brokerage house. He said that during the two audits he obtained permission of the auditors to remove particular certificates for the day's deliveries, that is, those which were needed to cover previous trades. He did this "and in addition to that I removed a like amount of each stock I knew was missing and put them with those that were to be used for delivery, passed them over to the auditor in charge, and he made a list of them." Later, " * * * the ones I had taken out by reason of the shortage I dropped back into the box and only left those that were actually needed for delivery, and in that way the securities I turned back again were counted a second time, * * *." The above testimony was with reference to the 1936 episode. Storay's testimony as to 1939 is identical except that in that year the auditors took the security boxes away so quickly that he was unable to replace all of the excess certificates immediately. He finally used some excuse and succeeded in returning the balance to one of the security boxes.

Heinbokel, one of the defendants, testified that in the course of the 1936 audit his partner Griffiths listed the day's business certificates and then turned them over to the Brooks delivery clerk. As to 1939, he said that Griffiths with Stone and Thomas of their staff, listed the day's certificates and on completion of this, Griffiths gave the certificates to a Brooks employee named Merkel. Griffiths' evidence was substantially the same on these matters. Both Heinbokel and Griffiths emphatically denied giving the certificates to Storay in either year.

After the defense had rested the Court said: *"Now we are ready for the rebuttal. I would like to know, unless there is very little rebuttal, what you are going to show by rebuttal."* (Emphasis ours.) Counsel for the plaintiff stated in effect that in order to rebut the testimony of Heinbokel and Griffiths they offered to show by the daily blotters or daily take-off sheets and the stock position records kept in the regular course of business in Brooks office, that the excess securities which Storay said he had removed from the boxes and which he had induced the auditors to list as part of the day's deliveries, were not in fact used or needed for any day's business during the audit but were actually in the security boxes where Storay claimed he had replaced them and where they were, according to Storay, when the defendant auditors again counted them and in so doing missed the existent shortage. The offer was objected to as not rebuttal and the Court sustained the objection. On the motion for the new trial, the District Judge in his opinion after noting that the plaintiffs had offered to rebut the defendants' testimony with Brooks' records showing that the excess securities were not used in the business of the office, stated: "It is obvious that there still would have remained in the case the question of fact as to whether Storay had returned any certificates to the boxes." The Court then continued [55 F.Supp. 1010, 1011]:

"This was plaintiff's ground for a new trial, not a fact which would undoubtedly

have changed the verdict by its admission, but one from which the jury might have inferred that the credibility of the defendants was to be doubted, from which inference in turn they might infer that Storay did replace the duplicate stock certificates of those he had stolen in the boxes to be counted by the defendants." .

The Court said further:

"The records which plaintiff desired to have received in evidence were not produced for identification or examined by the Court, nor was any witness put upon the stand to authenticate them. The Court has no way of knowing what was contained in the documents. I felt at the time, and I feel now, that the offer did not rebut the evidence specified in the offer. The exclusion certainly should not have caused any prejudice in plaintiff's case."

The complete answer to the proposition that the suggested records were not produced for identification, etc., is, we think, contained in the above referred to trial proceedings. The Court specifically requested counsel to advise him as to the proposed rebuttal testimony. Counsel did this. Consideration of the offer did not in any way turn upon the records being produced for identification but upon counsel's description of the testimony to be produced. It was on that description that the offer was rejected as not rebuttal. In passing it will be remembered that the plaintiff was the subrogee of the Brooks company and that it was the records of the latter concern which plaintiff wished to produce. There is no indication in the testimony that such company records were not available to the plaintiff.

■ We agree of course that harmless error is not ground for setting aside a verdict or judgment and that where the probative force of the improperly excluded evidence is inconsequential, the error is not reversible. State Line & Sullivan R. Co. v. Phillips, 3 Cir., 98 F.2d 651, at page 654 120 A.L.R. 441; certiorari denied 305 U.S. 635, 59 S.Ct. 103, 83 L.Ed. 408. However, under the very language of the District Judge in his opinion we cannot say that the proffered evidence here was of little or no value. Storay's testimony was the foundation of the claim sued on. On the stand he had admitted taking the securities and serving a prison sentence for that offense. This did not leave him in a particularly sacrosanct position before the jury and anything further weakening his credibility

was bound to be more harmful than under ordinary circumstances. Testimony by both Heinbokel and Griffiths that the latter, after the outgoing securities were listed, gave them to the delivery clerks was directly opposed to that of Storay who had said that the certificates were in his possession after they had been listed and that he put the excess certificates back in the security boxes. The business records of Brooks were offered to show that the excess certificates were not used in any day's business during either audit. This at least tended to contradict Heinbokel and Griffiths who had said, as stated, that all of the certificates listed for the day's deliveries were given by Griffiths to the delivery clerks with Storay not handling them at all except when they were first removed from the security boxes. The suggested evidence had added importance because it rendered more acceptable the mechanics of Storay's theft. As Justice, then Circuit Judge, Van Devanter remarked in Stanley v. Beckham, 8 Cir., 153 F. 152, at page 156:

"It is said that the evidence was so overwhelmingly in favor of the defendant that, notwithstanding the matters here considered, no jury would have found for the plaintiff; but of this it is enough to observe that, while the evidence for defendant was strong and persuasive, there was yet such a conflict between it and the evidence for the plaintiff as to entitle the latter to a submission of the issues to the jury."

■ We think the evidence could have been introduced in plaintiff's main case but as said in Schoen v. Elsasser, 315 Pa. 65 at page 68, 172 A. 301, 302: " 'Where, however, evidence is real rebuttal evidence, the fact that it might have been offered in chief does not preclude its admission in rebuttal.' 26 R.C.L., § 46, pages 1041, 1042; Stetson v. Croskey, 52 Pa. 230." We do not see that plaintiff was bound to anticipate defense proof that Storay did not have possession of the securities after they were listed and so make it impossible, as he claimed, to replace them in the boxes. Therefore when that testimony did come in it became necessary to refute it or at least to render its value doubtful. Proof that the excess securities were not used in the day's business would have been of some assistance in that connection. It would have raised a serious problem of credibility and might have adversely affected the defense. It shapes up as well within the scope of rebuttal. The rule regarding it is the same

in the United States Courts as under Pennsylvania law. In St. Paul Plow Works v. Starling, 140 U.S. 184, 11 S.Ct. 803, 35 L.Ed. 404, after the defendant had put in evidence earlier patents on the issue of want of novelty, the plaintiff offered to show that, before the date of any of them, he had reduced his invention to practice in a working form. The defendant objected urging it was immaterial and that it was part of the plaintiff's case in chief. The Supreme Court held at page 198, of 140 U.S., at page 808 of 11 S.Ct.: "Proof of the date of the plaintiff's invention was strictly a matter of rebuttal, after the defendant had put in the patents which were prior in date to the plaintiff's patent." In Throckmorton v. Holt, 180 U.S. 552, 21 S. Ct. 474, 45 L.Ed. 663, the proponents of a will offered certain proof as rebuttal evidence on the genuineness of the signature of one of the witnesses to the document. The Trial Judge excluded it as improper rebuttal. The Supreme Court said at page 564 of 180 U.S., at page 479 of 21 S.Ct.:

"We think this evidence was competent in that character, and should have been received. The case in regard to the genuineness of the paper was very closely contested, and was one of the vital points in the trial. Evidence had been given on both sides, and witnesses of the highest character and respectability had differed in regard to the genuineness of the signatures. Although the court, when the case was first with the proponents, had notified counsel that they must offer all the evidence they proposed to offer upon the subject before they first rested their case, and in accordance with such decision they had proceeded to give further evidence, we are not able to see how that fact is material at this point. Counsel for the proponents could not anticipate what evidence would be given by their opponents, nor what reasons might be offered by a witness as the ground for an opinion against the genuineness of any signature on the paper."

The admission of the testimony would not have been unfair to the defendants. The plaintiff had shown its hand. No new theory of alleged negligence of the defendants was involved. Even the element of surprise does not seem to have been present perhaps because of the familiarity of the defendants with the Brooks' records. The barring of the evidence results in a manifest injustice to the plaintiff.

Reversed.