## KOPPE v. BURNSTINGLE.

District Court, D. Rhode Island.   January 3, 1929.

No. 302.

Herbert B. Barlow, of Providence, R. I., for plaintiff.

Thomas A. Jenckes, Jr., of Providence, R. I., for defendant.

LETTS, District Judge. This is a suit in equity brought to enjoin the infringement of a patent on a game called "Golf Dice," and for an accounting.

The device consists of two cubes, similar to ordinary dice, having impressed upon the several faces of one cube the numerals "1" and "2," and upon the several faces of the other cube lettering or words pertaining to the topography of the golf course, such as "fairway," "water hazard," "bunker," "in the cup," and "in the rough." The game is played by rolling the cubes, as in the case of ordinary dice, the numeral "1" or "2" appearing upon the upper face of one cube indicating the number of strokes, so-called, which have been required to reach the imaginary position upon the golf course indicated by the word or words appearing upon the upper face of the other cube. For example, if the player rolls the cubes, with the result that the upturned numeral on one cube is "1," and the upturned lettering on the other cube is "in the cup," he is assumed to have made the hole in one. On the other hand, if the upturned numeral is "2" and the word on the other cube is "bunker," he is presumed to have used two strokes to have reached that point of advancement, and continues to roll the dice until the words "in the cup" appear uppermost on the one cube, and adds the total of the numerals which have successively appeared upon the upper face of the other cube. That total is supposed to reflect the number of strokes utilized.

The application for the patent was filed September 27, 1921, and granted May 6, 1924, to one Harry C. Meyer. The patent was assigned by the patentee to the plaintiff in this case April 3, 1928. No question was raised by the defendant in respect to the validity of the assignment.

The parties stipulated as to the facts pertinent to the determination of damages in event it is found that there has been an infringement by the defendant of a valid patent.

It appears that, beginning some time in 1920, the plaintiff and defendant, as equal partners, were engaged in the manufacture of celluloid novelties. In the spring of 1922, this partnership was dissolved. It appears also that during the term of this partnership some kind of an arrangement had been entered into with the then owner of the patent, Meyer, or his consent upon some terms obtained for the manufacture and sale by the partnership of the "Golf Dice," made in accordance with the specifications of the patent in question.

The defendant has interposed several defenses: First, that Meyer, while the owner of the patent, granted a license to the plaintiff and defendant while copartners to manufacture and sell the "Golf Dice," which license it is contended, is still retained by the defendant, unaffected by the subsequent transfer of the patent to the plaintiff. Second, that the patent is invalid because it embodies a gambling device, and is therefore against public policy. Third, that the patent is invalid because of lack of invention.

We will deal with these issues as raised in the order named.

■ It is true in respect to the claim of the defendant that, if a license was granted by Meyer to the plaintiff and to the defendant as individuals associated in business, the defendant would here, in the absence of evidence of his abandonment or breach of that license, have as much right as the plaintiff to manufacture the "Golf Dice" in question. It appears also to be a settled rule of law that a license by a patentee does not need to be set forth in formal written instrument. An oral license is valid, and one for an indefinite period will be construed as for the life of the patent. But how is one to tell, assuming that there was a license, whether is was for an indefinite period or for a period so limited as to have expired as of the date of the alleged infringement? On this point the testimony is so meager and inconclusive that one is left to conjecture.

■ It is impossible to find that the defendant in this case is a licensee without a substantial disclosure of the terms and conditions of the license alleged. The most that can possibly be inferred from the record is that there was some understanding. The court is not warranted on that state of proof in the present case to infer, first, that there was a subsisting license, and, second, that the term of the license was indefinite, and therefore for the life of the patent, or, if definite, for a sufficient period of time to protect the defendant in the manufacture of the "Golf Dice" as of the time that the alleged infringements occurred. It is therefore found that no rights in the defendant as a licensee have been established.

We next come to the question of whether the patent was invalid because of embodying a device for gambling, and therefore against public policy.

■ In determining this question, there is at hand no absolute rule or standard which

may be applied. Many devices for amusement, and nearly all devices for a game, may be utilized for gambling in so far as the outcome of the operation of the device is dependent upon chance rather than skill. In the present instance, it would appear that no element of skill is involved. The outcome of the manipulation of the "Golf Dice" is wholly one of chance. This fact, however, is not determinative of the question involved. It is well settled that a patent is not invalid merely because the device of which the patent is descriptive may be put to an illegal purpose. If the device may be lawfully employed and is normally and naturally adapted to a lawful use, the patent covering the same will not be held invalid as against public policy.

While this Court would not hold the patent in question to be invalid because of the grounds asserted in support of this defense, there are raised in this connection considerations which are bound to intrude in weighing the issue yet remaining; namely, whether the patent in question discloses an invention that is "new and useful" within the meaning of the statute. We come then to the consideration of this defense.

The available authorities upon the subject assist little beyond indicating in a general way the principles of law which should control the determination. It has been repeatedly held that a combination of old elements does not constitute a patentable invention, where they are all found, some in one and some in another of earlier devices for the same or substantially the same purpose. An invention, in the sense of the patent law, means the finding out, the contriving, the creating of something which did not exist, and which was not known before, and which can in some real sense be made useful and advantageous to society. It was never the intention to grant a monopoly for a contrivance of a trivial character merely because in its exact form and application it is new, nor to thus protect the embodiment or application of an idea which would naturally and spontaneously occur to the skilled observer in the ordinary progress of manufacture.

As is so often true in patent matters, the case here presents its real problem in the refinement or interpretation of the facts, in the consideration of and weighing that which the patentee did in the light of the background of existing facts and knowledge.

The patentee in his specifications relative to his alleged invention frankly recognizes that the die members employed are "adapted for use in much the same manner as ordinary dice."

So ancient is the game of dicing as such that no one has been able with any authority to state its origin. It is supposed that the game of dicing was an Asiatic conception, and derived or developed from knucklebones. It is fairly certain that both games antedate any written records. It is known that Palamedes, a Greek, taught the use of dice to his countrymen during the seige of Troy. In the excavation of ancient tombs in the Orient dice and knucklebones have been found.

From that time to this variations in the form, use, and purpose to which dice have been put have been a matter of general knowledge to the peoples of nearly every civilized country of the world. In some instances the embodiment of these variations and adaptations have been subject to patents.

In 1881, patent No. 244,520 was issued to one Bacon relating to the manufacture of dice, wherein he claims: (1) Dice provided with pictorial representations appropriate to the game being played; (2) a die having on its faces pictorial devices representing the faces of the cards used in playing poker; (3) the combination, on a die, of the usual spots on each face with pictorial representations of the cards used in playing another game.

In 1895 one Brown obtained a patent, No. 543,463, on a game apparatus which he described as "for playing a parlor game of football simulating closely the game of football as played in the field." The apparatus consisted of a board, the face of which was marked off to resemble a football field, a peg to represent the ball, and dice used in playing the game. In this case one of the dice cubes, of which there were three, had numerals impressed upon four of the six faces, respectively, "0," "1," "2," and "3"; the other two dice members having the faces or sides marked with a designated color. The dice were thrown from a cup, and, according to the numerals and colors appearing uppermost, the advancement of the imaginary ball on the surface of play was determined. Each color represented a given yardage of loss or gain. The outcome of the game, like most games wherein dice are employed, was one of chance.

A somewhat similar game is described in patent No. 543,251, granted also in 1895, as an improvement patent to one Jessup.

In 1896 a patent was issued to one Nachmias, No. 563,507, on a game to be played with cubical blocks to indicate the winning and relative positions of horses in an imaginary horse race. In connection with the blocks or dice cards were used.

In 1911, patent No. 1,009,471 was issued to one Campbell on a game described as a

miniature baseball game to be played indoors. It consisted of a board whereon a diamond and field were drawn, a plurality of game pieces and a plurality of dice used to determine the advancement of the game; the several faces of the dice bearing designations indicative of certain plays.

A patent issued to Tyng in 1898, No. 596,556, discloses an apparatus for playing an imaginary indoor game of golf. The apparatus consists of a miniature golf course with appropriate designations of locations, together with a teetotum with letters and other indicia thereon which control and indicate the advancement of the play. The result of each play is ascertained by reading the indicia upon the uppermost face of the top after it has been spun and comes to rest.

A patent issued to Whitlatch in 1906, No. 811,347, shows a golf game, but one which employs, instead of dice or a top, a dial to be spun, on the face of which dial appears words or insignia pertaining to the topography of a golf course. There is also employed a board for the play.

All of the aforementioned are United States patents.

The British patent issued to Bignold in 1910 is illustrative of a similar type of game. It is played with a board whereon a miniature course is laid out, but the control of the advancement of the play is accomplished by the use of plural dice elements, on the various faces of which are impressed certain indicia.

So far as this court has been able to discover, there are no reported decisions dealing with the validity of these various patents. They are here considered only as reflecting in part the prior state of the art in 1921 when Meyer's patent was applied for.

Meyer claims as his invention a plurality of dice elements, one bearing indicia pertinent to the topography of a golf course and the other numerals designating strokes. Certainly in view of what had gone before, there was nothing new in devising an indoor imaginary golf game. There was nothing new in utilizing dice as controlling the progress of the game. The most that can be said for Meyer's patent is that in the play there is eliminated the use of a board or miniature playing field and the impressment of all necessary words and indicia upon the face of the dice.

The dice members as employed in Meyer's patent perform no new function, no new result is accomplished, excepting the omission of the board or playing field, and this by leaving the players to rely upon memory in tabulating the progressive result of the play.

In view of the prior state of the art, there is nothing in the specifications and claims of the patent here in suit which constitutes invention within the meaning of the patent law.

The bill of complaint is therefore dismissed.

An appropriate draft decree may be submitted for entry.